## City of Cincinnati, Ohio, et al. v. Commonwealth ex rel. Reeves.

Dec. 11, 1942.

598

Harry B. Mackoy, John D. Ellis, George R. Hunt and Bradley & Bradley for appellants.

Clifford E. Smith, J. J. Leary and Henry M. Johnson for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The primary question involved in this litigation is whether the City of Cincinnati is liable to the Common-

wealth of Kentucky for income taxes on the rent which it receives from its co-appellant Railway Company for the latter's use of the City's steam railroad tracks and terminals located in Kentucky which constitute the major part of the railroad system owned by the City, extending from Cincinnati, Ohio, through Kentucky, and into the State of Tennessee. Subsidiary questions are, (1) the propriety of the method employed by the Kentucky taxing authorities in determining the proportion of the rental properly allocable as rent from the Kentucky properties; and (2) what penalties Kentucky is entitled to collect in the event income tax liability exists.

Though historically interesting, lack of time forbids a recitation of the facts preceding and motivating the inauguration in 1869 by the City through an enabling act of the General Assembly of Ohio of what has proven to be one of the most successful business enterprises ever undertaken by a municipality. It is sufficient to say that after several unsuccessful attempts, the City, in 1872, obtained from the Legislature of Kentucky an act permitting the construction of the railroad through that State; and that since its completion in 1881, it has been under lease to the appellant Railway Company. The present lease was executed on January 1, 1928, and covers a period of ninety-nine years from that date. Under this lease, the City receives an annual rental of $1,250,-000, plus the expense of maintaining the operation, plus interest and sinking fund payments on certain bonds, plus improvements to its railroad, plus 2% of the net profits derived by the lessee from the operation of the leased railroad. At intervals of twenty years the rental increases, as does also the percentage of profits to which the City is entitled. Originally the City was required by the Kentucky Act to pay into that State's treasury 50c for each passenger carried across the Commonwealth, 25c for each passenger carried 100 miles within its boundaries, and 1c for each 100 pounds of through freight shipped. Almost immediately, however, these provisions were repealed, and since that time the City of Cincinnati has occupied the same position with respect to the laws of Kentucky as that occupied by other corporations owning and operating, through lessees, steam railroads through the State.

The case was tried on a stipulation of facts containing sixteen paragraphs and numerous exhibits. Obvious-

ly, it is too lengthy to reproduce here, but its relevant provisions are susceptible to summation as follows:

Cincinnati is a municipal corporation, created under and exercising the powers granted by the Constitution and laws of the State of Ohio. Its support is derived from taxation; and the net rents from the railroad property referred to constitute a relatively small part of the total revenue necessary to be expended in maintaining the City. 58.8% of the mileage of the railroad in question is located in Kentucky; its total value (replacement cost, less depreciation), including all terminals and fixed property, is $58,149,591; the value of that portion located in Kentucky is $33,846,378, or 58.2% of the total value; and the income tax claimed by Kentucky is allocated by averaging the ratio of the mileage of the railway in Kentucky to its total mileage (58.8%) and the ratio which the value of the Kentucky properties bears to the total value, including terminals (58.2%). The rents were payable and actually paid in the City of Cincinnati; no income tax returns were filed by the City with the Kentucky authorities, and no income tax ever paid by the City to that State on account of the aforesaid rents. Bonds for the construction and improvement of the Railway Company were issued by the City and the rentals have been and are being used in retiring these bonds and discharging other bonded indebtedness of the City, and in paying the interest thereon. From time to time, the City filed with the Secretary of State of Kentucky required statements designating agents for the service of process in actions instituted in that State; from time to time, the City has exercised the power of eminent domain granted it by the laws of Kentucky; and has taken title by voluntary conveyance to numerous parcels of land situated in that State, several of which parcels, it has subsequently sold and conveyed. In the fifth paragraph it is stipulated that the rentals received by the City for the properties in question during the four years for which recovery of income tax is sought, as well as the deductions to which the City was entitled in computing the amount of taxes claimed, are correctly stated in the petition. Paragraph 10 sets forth that various Kentucky municipalities own, maintain, and operate in Kentucky, both within and without their boundaries, waterworks systems, electric light and power plants, and other public utilities for the purpose of fur-

nishing themselves and their inhabitants with the products and services thereby produced; that some of them dispose of their surpluses thus produced, to outside communities, provided such communities construct, own, and operate to the boundaries of the selling municipalities their own lines, mains, or facilities for receiving such products or services; and that such municipalities have not filed income tax returns, or paid, or been requested by the Commonwealth to pay taxes on the net income so derived.

The Circuit Court, on appropriate pleadings, the testimony of Kentucky's Director of Finance, and the aforesaid stipulation, held that the tax was applicable and entered judgment against the City of Cincinnati in favor of the Commonwealth of Kentucky for taxes, penalties, and interest aggregating $166,474.68, or 58.5% of the net income derived by the City from the lease in question during the years 1936, 1937, 1938, and 1939. On this appeal from that judgment counsel for the respective parties have cited a vast array of authorities. While the generous quotations in the briefs have been of assistance to the Court, limitations of time forbid more than a brief reference to those we deem most applicable in disposing of the grounds urged for a reversal, which may be summarized as follows:

(1) The Kentucky Act. imposing an income tax on corporations applies and was intended to apply only to business corporations and not to municipalities; (2) the Act excepts from its application all corporations "not organized or conducted for pecuniary profit," and the City of Cincinnati is within that category; (3) during the years for which income taxes are claimed, the City of Cincinnati was not doing business in Kentucky within the meaning of the Statute imposing the tax, and for this reason, if for no other, is not liable; (4) in attempting to collect an income tax from the City of Cincinnati, the State of Kentucky is guilty of arbitrary discrimination against that City in violation of the provisions of the Constitution of the United States and the Constitution of Kentucky; (5) the Kentucky Statutes do not provide a method for allocating, or properly allocating the claimed tax; (6) even though the City was liable for income tax as claimed by the Commonwealth, the penalties included in the judgment are in violation of the provisions of the Income Tax Statutes and not justified by law.

■ It is obvious that the validity of the first of appellants' contentions, as we have framed it, is determinable solely by the proper construction of the language employed by the Legislature in designating the recipients of income who are required to pay a tax thereon; and that the validity of the second of appellants' contentions is dependent upon whether the City of Cincinnati is a corporation, ''not organized or conducted for pecuniary profit'' within the meaning of the language exempting such corporations. Thus, it becomes necessary to quote the applicable section of the Act;

> ''(3) Every domestic corporation organized under the laws of this State and every foreign corporation doing business in this State (except state and national banks and trust companies, insurance companies including farmers' or other mutual hail, cyclone, windstorm or fire insurance companies, insurers and reciprocal underwriters, and religious, educational, charitable and other corporations not organized or conducted for pecuniary profit) shall pay for each taxable year a tax to be computed by the Department upon the entire net income of such corporation, derived from business done, property located or sources in this State; and such tax is hereby annually levied for each taxable year at the rate of four per cent (4%) of the entire net income of the corporation or the portion thereof taxable within the State, determined as provided in this Act.'' Kentucky Statutes, Section 4281b-14, Paragraph 3, KRS 141.040.

A large portion of appellants' brief is devoted to an attempt to demonstrate that the Kentucky Income Tax Law was not intended to apply to the income of municipal corporations from whatever source derived. The demonstration is accomplished to appellants' satisfaction by a citation of the numerous authorities, including decisions of this Court, to the effect that taxing statutes are to be strictly construed and their scope never extended by implication, and by emphasizing the fact that no Kentucky municipality has been required to file an income tax return or to pay an income tax. But the weakness of appellants' argument in this connection consists of its failure to distinguish between municipalities operating utilities for the benefit of their inhabitants and within the state conferring the municipal statutes, and

those conducting their operations beyond their boundaries or the boundaries of such state, and in its failure to differentiate between the liabilities attendant upon the governmental operations of municipalties and those attendant upon their proprietary or commercial operations. If the City of Cincinnati was a municipality of Kentucky operating a public utility under the restrictions imposed by the laws of that State, appellants' argument would be sound, since the Act does not, in terms, apply to "municipalities," and exempts even private corporations when not organized or conducted for pecuniary profit. But the tax is expressly imposed on every other type of corporation doing business in this State, except banks, trust companies, insurance organizations, and religious, educational, and charitable institutions; and in its final analysis, the controlling question would seem to be whether the City of Cincinnati in its capacity of owner and lessor of a railroad system extending through Kentucky is, in law and legislative contemplation, a "municipal corporation," in which case it is exempt, or a "foreign corporation doing business in this State," in which event it is liable for the tax. No reason is apparent why the Legislature, unless obligated by law to do so, should have desired or intended to exempt from the tax the inhabitants of a foreign city operating, through their municipal representatives, a lucrative railroad enterprise within the boundaries of the State, and thus discriminate against the stockholders of a foreign corporation conducting a similar enterprise. A municipality operating beyond the boundaries of the sovereignty creating it, is universally regarded as a private corporation with respect to such operations. Even a state may not claim sovereign immunity for its business enterprises conducted beyond its borders. In State of Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 370, 68 L. Ed. 796, which involved the right of Chattanooga, under Tennessee laws, to condemn a railroad constructed therein by the State of Georgia, the Supreme Court said:

"The sovereignty of Georgia was not extended into Tennessee. Its enterprise in Tennessee is a private undertaking. It occupies the same position there as does a private corporation authorized to own and operate a railroad, and, as to that property, it cannot claim sovereign privilege or immunity."

Peculiarly pertinent is the following excerpt from

the opinion of the Supreme Court of Ohio in the case of State of Ohio ex rel., etc., v. Le Blond, 108 Ohio St. 41, 140 N. E. 491, 495, which involved the very City and Railroad with which we are concerned:

"It is well settled that a municipal corporation has a dual capacity, the one governmental, or public, the other proprietary or private. In all those matters where it performs its governmental functions as an agent of the state its powers may be changed or revoked without impairment of any constitutional obligation; but when acting in its proprietary capacity it is entitled to constitutional protection. In such case it stands in all respects on the same footing as any private corporation exercising similar franchises. In owning and operating a railroad the city of Cincinnati is engaged in a business undertaking for profit, and therefore subject to the same rules, and entitled to the same constitutional guaranties, as any private corporation."

In State ex rel. Taggart, et al. v. Holcomb, et al., 85 Kan. 178, 116 P. 251, 254, 50 L. R. A. N. S., 243; Ann. Cas. 1912D, 800 (writ of error denied Kansas City v. State ex rel. Taggart, 226 U. S. 599, 33 S. Ct. 112, 57 L. Ed. 375), which was an action to compel the County Clerk to place upon the rolls for taxation a waterworks plant owned by the City of Kansas City, Missouri, but situated in Wyandotte County, Kansas, the Court, in granting the relief sought, said after reviewing the authorities:

"And so it may be said here that, when a city of the state of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property, not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign municipality, who is here in the capacity of a private proprietor, and whose property receives protection from the state, should contribute nothing towards that protection or should escape paying the taxes imposed upon other owners of property. It is clear that the exemptions from taxation, provided for the state and for cities and municipalities of the state, are only declaratory of the immunity that would be granted on fundamental

principles of government, and that the cities and municipalities referred to in the statute and Constitution are those of our own state.

"The fact that municipalities of another state, which become proprietors in Kansas, are not accorded exemption from taxation, is no basis for the claim that the interpleader is denied the equal protection of the laws or deprived of property without due process of law in violation of the federal Constitution."

See also Baker v. Kansas City, Missouri, 118 Kan. 27, 233 P. 1012.

■ Conceding that the City of Cincinnati was not organized, and is not conducted primarily for pecuniary profit, in no sense is it true that the acquisition and conduct of its railroad enterprise was without the expectation or actuality of pecuniary benefits. As said by the learned Chancellor:

"The business with which we deal here was organized and is owned solely for the purpose of making a 'pecuniary profit'. There is nothing mystical about 'pecuniary.' The word was lifted bodily from the Latin 'pecuniarius' which originally denoted 'cattle' cattle being then a medium of exchange, but which now means plain money, the kind of money the citizens of Cincinnati made out of the ownership of the railroad and the kind of money the Commonwealth now desires to tax."

If it is conceivable that a municipality owning and profitably operating, through a lessee, a railroad extending several hundred miles beyond its boundaries, was intended to be included in the category of "corporations not organized for pecuniary profit," the conception could only be justified upon the theory that benefits would thus be conferred upon the citizens of the state, the same theory which justifies the granting by a state of exemption from taxation to "religious, educational and charitable corporations." Presumably, a corporation not organized for pecuniary profit is designed by its incorporators for the attainment or conference upon others of spiritual or cultural benefits, or benefits of a philanthropic nature. But foreign corporations of the all-inclusive category mentioned, are universally held not to be entitled to exemptions from taxation granted

by states to similar corporations dispensing their benefits within the state. In Lloyd Library & Museum v. Chipman, 232 Ky. 191, 22 S. W. (2d) 597, 598, this Court said:

"We are forced to the conclusion that Section 170 of the Constitution refers only to institutions of purely public charity, or institutions of education located in this state. Exemptions to charitable and educational institutions are bottomed on the fact that they render service to the state, and thus relieve the state and its people of a burden which they otherwise would have to assume. In its final analysis, an exemption is equivalent to an appropriation. It was never the intention of the framers of the Constitution that Kentucky should make an appropriation for the benefit of foreign institutions that render no service to the state. If such were the rule, many foreign institutions from which the citizens of our state receive no benefit might find it to their advantage to come into our midst and invest their endowments in Kentucky property."

In Layman Foundation v. City of Louisville, 232 Ky. 259, 22 S. W. (2d) 622, 623, we said:

"We have uniformly adhered to the fundamental principle on which the right of exemption is always rested, which is that the institution must be rendering an essential service to the people of the commonwealth, thereby relieving to that extent the charge on the general public. * * * Where an institution, even though it may be of a charitable or educational character, renders no service to the people of this state, its property herein is not exempt from taxation. * * * No part of Kentucky's duty is discharged by appellant in doing charitable or educational work in another state."

See also Board of Education v. Illinois, 203 U. S. 553, 27 S. Ct. 171, 51 L. Ed. 314, 8 Ann. Cas. 157; Ferguson v. Townsend, 114 W. Va. 432, 162 S. E. 490; Dwight School v. State Board of Tax Appeals, 114 N. J. L. 594, 177 A. 875; Id., 117 N. J. L. 113, 187 A. 36; People v. Illinois Merchants' Trust Co., 328 Ill. 223, 159 N. E. 266, 62 A. L. R. 318; In re Thomas' Estate, 185 Wash. 113, 53 P. (2d) 305; In re Park College, 170 Okl. 132, 39 P. (2d) 105.

Clearly, the people of Kentucky derive no benefit from the City of Cincinnati's ownership and operation of its railroad, for which they do not pay, with the coin of the realm, the standard price exacted by stock corporations operating railroads. As aptly said by the Chancellor:

> "When a Cincinnatian rides the C. N. O. & T. P. Railroad to Chattanooga he reduces his tax bill to the extent of the profit he pays the city-owned railroad. When a Kentuckian does the same thing he also reduces the tax bill of Cincinnati. In both cases the profit to the taxpayer in Cincinnati is apparent. In the second case, all the Kentuckian gets is the ride."

Presumably, the Legislature was acquainted with the well known principles of law hereinabove discussed, and, in the absence of any conceivable reason for exempting the income of a foreign municipal corporation derived from a business enterprise conducted in this state, regarded such municipalities as included within the term "foreign corporations doing business in this state."

■ It is contended by appellants that a foreign corporation which derives rental from an operating company for the use of its railroad tracks and terminals situated in this State is not doing business in this State, and hence that it is not within the terms of the Act imposing the tax. But that the Legislature did not intend that such a narrow construction should be placed on the descriptive phrase "doing business in this State" is apparent from the fact that KRS 141.040, heretofore quoted, imposes the tax upon the income of corporations derived from "property located or sources" in this State, as well as from "business done" therein, and from the provisions of KRS 141.120 allocating to Kentucky not only "interest, dividends, rents and royalties * * * received in connection with business in the State," but such items of income received from "sources within Kentucky," though not received in connection with the transaction of business in the State. There could have been no reason for requiring the allocation of rent "not received in connection with the transaction of business" to Kentucky "if received from sources within Kentucky" if such rent was not to be taxed under the Act. The definition of "gross income" contained in the opening section

of the Act (KRS 141.010) also would seem to negative the narrow construction contended for by appellants. Furthermore, it cannot be disputed that if the railroad owned by the City of Cincinnati was owned by a domestic corporation, or by an individual whether resident or non-resident, the income derived from the lease would be taxable; and surely, it is not to be presumed that the Legislature intended to discriminate against individuals and domestic corporations in favor of foreign corporations.

But, to meet the issue squarely upon the ground chosen by appellants, namely, the proper interpretation of the phrase, "doing business in this State," it is only necessary to refer to the reasoning of this Court in the case of Greene v. Kentenia Corporation, 175 Ky. 661, 194 S. W. 820, 823. That corporation merely owned timber and mineral lands in Kentucky, and asserted that it was not within the provisions of the Statute imposing a license tax upon "all corporations * * * owning property or doing business in this State." Ky. Stats., 1915, Section 4189a. Said the Court:

"But we do not construe that phrase ['doing business'] to be confined to such a narrow meaning. When plaintiff invested its capital in the coal and timber land which it purchased in this state, it did so for one of two purposes; that of speculation by holding the land until it naturally increased in price, or to reap a profit from it by operating it either in the way of cultivation, mining, getting timber from it, or otherwise, so as to make it profitable. It avers in its pleading that it is doing neither of the latter, and therefore it is not doing business in this state. But, according to our conception, the land need not be in actual use in order to constitute doing business. * * *

"As seen, plaintiff employed its capital by investing it in real estate situated within this state. It then put its capital in motion, and as long as it remains so invested it is doing business for its owner."

Also worthy of quotation is the following except from the Chancellor's opinion in the case at Bar:

"Lastly, it was contended by the City that the Kentucky Income Tax Act taxes only those corporations doing business in Kentucky and the City, it was

contended, was not doing business. This contention cannot prevail in the light of admitted facts. The City is largely engaged in doing the very thing it was empowered to do by the Ohio and Kentucky Legislatures. It was authorized by both Acts to construct, maintain and lease a line of railroad. It has constructed—it is maintaining and leasing it. 58.8% of the mileage and 58.20% of the value of the line is located in Kentucky. The City does all acts in Kentucky and possesses the power to continue to do all acts necessary to the maintenance and leasing of that portion of its line of railroad located in Kentucky. It has named a process agent here and has qualified in Kentucky in the same manner as a non-resident corporation. It obtains a large net income from the leasing of its railroad more than half of which is located in Kentucky. The Court of Appeals has held far less than the facts here reflect to constitute 'doing business'' under an Act not so imperative in its terms as the Kentucky Income Tax Act.''

On March 12, 1873, the City of Cincinnati accepted the terms of the Kentucky Act which permitted the building of the railroad; on December 14, 1901, like other foreign corporations doing business in this State, it qualified by designating a "place of business" and a process agent therein; and on November 15, 1940, it re-qualified under the 1940 Act, Acts 1940, c. 41, giving the name and address of its process agent, and its business address in Covington, Kentucky. On numerous occasions it has exercised its power of eminent domain in Kentucky, and still possesses that power. It has acquired property in Kentucky whenever it deemed it necessary for its purposes, and has conveyed by deed several parcels of real estate or rights therein during the period involved in this litigation. It has inspected its Kentucky property at regular intervals and reserved the right of inspection in its lease. Within the period for which taxes are claimed it has re-financed its obligations in an amount in excess of $15,000,000 in order to obtain a lower rate of interest. As before stated, it receives, in addition to fixed rentals, a progressively increasing share of the profits from the operation of the railway, and the performance of its lease is secured by mortgages recorded in each county of Kentucky through which the railway passes.

In the light of these facts, the City's contention that it is not doing business in Kentucky is wholly untenable, and the authorities cited in support thereof are inapplicable.

■ Appellants' contention that the imposition of an income tax on the City of Cincinnati arbitrarily discrimintes against that appellant, in violation of the Fourteenth Amendment to the Federal Constitution, is necessarily predicated upon the assumption that there is no reasonable basis for classifying differently, for purposes of taxation, domestic and foreign municipalities, since, otherwise, the protection of the Amendment could not be invoked. Discarding from consideration the fact that one exercises governmental powers, and to that extent is an agency of the state creating it, while the other can serve no governmental purpose, there is still no parallel between the operations of Kentucky municipally owned utilities, and the railroad enterprise engaged in by the City of Cincinnati. In this state, a municipally owned utility, upon its construction, purchase, or acquisition by the City, becomes public property used for public purposes, and hence is exempt from taxation. City of Harlan v. Blair, 251 Ky. 51, 64 S. W. (2d) 434. The income derived must be set aside for the operation and maintenance of the plant, and any surplus accumulated, transferred to a depreciation account to be used for improvements, extensions, or additions after the depreciation has been balanced. KRS 94.160, KRS 96.520. A fortiori, the City of Cincinnati cannot apply its income to any purpose in Kentucky. It inures to the "private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual" in the state of Ohio. 1 Dillon, Municipal Corporations, 5th Ed., Sect. 109.

Several of the cases referred to in the preceding portions of this opinion are authorities on the question now under discussion. See particularly the concluding paragraph of the excerpt hertofore quoted from the case of State ex rel. Taggart et al. v. Holcomb, supra. Also, People ex rel. Murphy v. City of St. Louis, 291 Ill. 600, 126 N. E. 529.

In an annotation in 99 A. L. R. 1144, under the title "Taxation of property belonging to another state or political subdivision thereof," the learned author says:

"As a general rule, property of a municipality located in another state has been held taxable therein; and the courts are fairly in agreement that exemption in the state of the situs of municipal and/or other public property has no application to such property, on the theory that by entering another state the political unit has forfeited all claim to sovereignty."

The cases cited by appellants do not support their present contention. Their effect is that equal treatment must be accorded persons or property in like situations. A sufficient answer to the deductions drawn therefrom by appellants' counsel is the statement that the City of Cincinnati does not occupy a situation with respect to its railroad enterprise in Kentucky similar to the situation occupied by Kentucky municipalities with respect to their municipally owned utilities, nor does it occupy a similar relation to the State. The case of Southern Railway Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 538, 17 Ann. Cas. 1247, urged upon our attention by appellants in their reply brief, is not in point. The substance of its holding is merely that a foreign railway corporation, owning fixed property and doing business in a sister state, may not be required to pay a tax for that privilege in addition to the taxes paid by domestic corporations. In the case at Bar the State is seeking to exact from the appellant City the same tax it imposes upon all other corporations, domestic and foreign, deriving income from the ownership and leasing of railroad tracks and terminals in the State.

■ In denouncing the method of allocation employed in computing the tax sought to be recovered, appellants' counsel contend that it was improper to include "the value of terminals outside of the State in the apportionment of the value of property in Kentucky on a mileage basis"; but, if we understand the record correctly, the contention is based upon a misconception. The stipulated value of the railway, including all terminals and fixed property is $58,149,591, and the stipulated value of the fixed properties of the railroad located in Kentucky, including terminals in Kentucky is $33,846,378, or 52.2% of the entire value of the whole line. Obviously, if the value of the Cincinnati terminals, not disclosed by the record, had been deducted from the total value, a deduction which appellants' counsel apparently contend should

have been made, the percentage of value in Kentucky would have been correspondingly increased. Since the percentage actually employed in determining the portion of the income properly allocable to Kentucky (58.5%), was obtained by adding the percentage of value in Kentucky to the total value (58.2%), and the percentage of mileage in Kentucky to the total mileage (58.8%), and dividing the same by 2, it is obvious that the City's tax was diminished instead of increased by the inclusion of the value of the Cincinnati terminals. In view of the failure of appellants to suggest a fairer or more accurate method of allocation than that actually employed, we have no hesitancy in approving it. See Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991; Underwood Typewriter Co. v. Chamberlain, 254 U. S 113, 41 S. Ct. 45, 65 L. Ed. 165. It is true that the statutes imposing the tax do not prescribe the formula to be employed in allocating to Kentucky its proportion, for tax purposes, of an income derived under circumstances such as are here shown to exist; but in view of the manifest intention of the statutes that the allocation should be made, we are not inclined to take seriously the suggestion of appellants' counsel that no allocation, however fair and equitable, could be effected, and in consequence, no tax collected.

■ A summary of appellants' argument respecting the penalties added to the tax is that, because of their severity, the Legislature did not intend that the delinquent who had failed to make a tax return, failed to pay the tax when due, and put the State to the necessity of instituting suit, should be subjected to the penalty prescribed for each specific omission; that some of the enactments were intended to supersede others; and that duplications were not in contemplation. The arguments are ingenious, but the length of this opinion has already exceeded the permissible; and it must suffice to say that we have considered them carefully, and concluded that the accumulated penalties, though onerous, are beyond neither the legislative power to impose, nor the legislative intent. KRS 141.170 (KS 4281b-21), KRS 141.220 (KS 4281b-34), KRS 135.060 (KS 4263), KRS 134.050 (KS 4114h-11).

Judgment affirmed.

Whole Court sitting.