No. 17,750.

THE YOUNG LIFE CAMPAIGN, A CORPORATION *v.* BOARD OF COUNTY COMMISSIONERS OF CHAFFEE COUNTY, ET AL.
(300 P. [2d] 535)

Decided June 25, 1956.   Rehearing denied August 27, 1956.

16

Messrs. SUTTON, AMAN & ENOCH, for plaintiff in error.

Mr. WILLIAM S. RUSH, Mr. JOHN STUMP WITCHER, for defendants in error.

Mr. JOSEPH A. CRAVEN, Mr. CHARLES A. MURDOCK, Amici Curiae.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

THE Young Life Campaign, a Texas non-profit corporation, brought an action against the Board of County Commissioners of Chaffee County, Colorado, Ben Behrman, Harvey Bender and James R. Sheehan, members of the Board of County Commissioners of said county; W. Jay Ramey, County Assessor, and Norwin F. Smith, County Treasurer of said Chaffee County, Colorado, to recover in the amount of $5377.60 which it had paid on property located in said county and which it claimed to be exempt from taxes under the Constitution and laws of the state of Colorado. Trial was to the court, which entered judgment as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff has shown no right to relief and accordingly the complaint and this action are hereby dismissed; that this dismissal be an adjudication upon the merits and with prejudice to the plaintiff; * * *." Plaintiff is here by writ of error seeking a reversal of the judgment.

Plaintiff in its complaint alleges that: It is the owner of certain real estate in Chaffee County, Colorado, consisting of more than 700 acres; is a non-profit corpora-

tion organized for the support of a benevolent, charitable, educational, religious and missionary undertaking; its properties are held for those purposes and not for pecuniary profit; it had exhausted all of its remedies in attempting to have its property exempted from general taxes by the taxing authorities of Chaffee County, but without avail; had paid its 1951-1954 taxes under protest, and, with reference to the payment of its 1954 taxes, had exhausted the statutory remedies provided by C.R.S. '53, 137-3-38, without success. It seeks a judgment ordering the county officials to refund the taxes together with interest thereon which have been paid for the years 1951-1954 inclusive, together with a judgment that its property is exempt from taxation and as such should be removed from the tax rolls of Chaffee County, Colorado.

Generally the answer admits the official position of defendants; plaintiff's protest as to the assessment thereof; a hearing before the assessor and a review by the Board of County Commissioners sitting as a Board of Equalization which denied the claim of exemption and generally that the proper statutory procedure had been taken entitling plaintiff to maintain its action in the district court. The remaining allegations of the complaint are generally denied, and the sufficiency of the complaint to state a claim upon which relief could be granted is challenged.

Plaintiff's evidence was to the effect that it was incorporated under the laws of Texas as a non-profit corporation on October 16, 1941, and on January 25, 1950, was issued a "Certificate of Authority" as a nonprofit foreign corporation by the Secretary of State of Colorado. According to its Certificate of Incorporation filed in Texas, the purpose of the corporation is "for the support of a benevolent, charitable, educational and missionary undertaking, particularly to encourage christian young people to continue their spiritual life, which shall be manifested in proper study, prayer and consistent

christian living" and plaintiff's testimony was to the effect that in general the objects and purposes set forth above were undertaken in Colorado.

In January, 1950, plaintiff purchased the Silver Cliff Ranch in Chaffee County, paying therefor $56,282.48, and in March, 1951, purchased the adjoining ranch property known as the Frontier Ranch, paying therefor the sum of $225,000.00. During the summer months the Silver Cliff Ranch is reserved for parents, adults and family groups who are not eligible to attend the other camps, attendance at the Frontier Ranch being limited to camping projects for those who are of high school age. The parents or adults attending at the Silver Cliff Ranch are charged $8.00 per day for each adult and $2.00 for each minor, while at the Frontier Ranch the regular charge is $35.00 per week, although high school students are sometimes permitted to come there without the payment of the normal weekly charge. At the Silver Cliff Ranch there are approximately fourteen cabins, a diningroom, lodge, and a swimming pool, and a small office building and manager's house, while at the Frontier Ranch there are approximately thirty-five cabins, a diningroom, kitchen and a small hospital or infirmary, and a trading post where religious books, ice cream, candy, trinkets and souvenirs are sold. There are also other structures such as barns, corrals, and houses for plaintiff's personnel as well as for guests. Conjointly and for use of high school students and guests from both ranches about fifty horses are kept which are rented to the guests at the Silver Cliff Ranch at a charge of $1.50 per hour, while guests at the Frontier Ranch are charged $1.00 an hour. Through salaried counselors, instructors or missionaries, the high school students at the Frontier Ranch are given religious instruction, and the privilege of the recreational facilities provided. The Silver Cliff Ranch is used in the wintertime for groups other than religious groups. High school students from Dallas, Texas, sometimes use the facilities at this ranch during

the Christmas vacation. These wintertime guests are charged $3.50 per day for board and room.

The auditor's report for the year ending September 30, 1954, discloses that plaintiff's ranch activities resulted in an excess over expenditures, notwithstanding counselor fees totaling $13,261.00 were paid, $6965.00 to those so engaged at the Frontier Ranch and $6296.00 to those so engaged at Silver Cliff Ranch.

Plaintiff's business office in the state of Colorado is at its Star Ranch at Colorado Springs, where its National Field Director and its Business Manager and office personnel are stationed. In furtherance of its purpose and for services rendered in the year prior to September 30, 1954, plaintiff paid salaries amounting to $188,641.87. During the summer season some of its salaried personnel are instructors at the Frontier Ranch, and during this period their salary is chargeable to the operation of the summer camp. Plaintiff's business manager testified that for the year ending September 30, 1954, Frontier Ranch showed an excess of revenue over expenditures of $4486.16, while at the Silver Cliff Ranch there was a deficit of $2545.74. However, according to his records, the Trading Post which is maintained at the Frontier Ranch, showed a bookkeeping profit of $2688.00. Of the entire attendance during the summer months at Frontier Ranch, only about two per cent of the high school students are from Colorado, while the remainder of those in attendance come from all sections of the United States and elsewhere.

According to the undisputed evidence, plaintiff, as we have said, expended for salaries during the year ending September 30, 1954, the sum of $188,641.87. According to its payroll, its salaried employees consist of a national field director, four regional directors, and an executive assistant to the national field director, a business manager, three assistant regional directors, twenty-eight staff representatives, twenty-four student staff members —students in colleges and seminaries—five clerical and

secretarial employees, and twenty-four ranch hands, together with some part-time clerical and ranch employees. Its teachers, instructors and missionaries are stationed in about twenty of the larger and more important cities in the United States and in Paris, France, and Canada. Many of these counselors, instructors and managers are provided with automobiles with which to carry on their work. Plaintiff's business manager was asked:

"Q. Now, Mr. Carter, from the books and records of the corporation will you state what the sources of income are for the corporation? A. From the operation of the ranch and—the operation of the ranches, and from free will contributions from our donors. Q. Are you able to tell from the books and records of the corporation whether or not the corporation could operate upon the income from Frontier and Silver Cliff and other properties owned by the corporation? A. No, sir, I am able to tell that from the books, yes. Q. And your answer was that they could not so operate? A. That's right."

By an exhibit under date of October 21, 1943, from the Treasury Department, Washington, D. C., plaintiff was advised that it was exempt from federal income taxes for the reason that it was *"organized and operated exclusively for religious purposes"* and a letter from the Department of Revenue, State of Colorado, under date of November 9, 1950, advised plaintiff that it was exempt from certain sales taxes as a *charitable institution.* Plaintiff in its brief disavows any claim of exemption based on an assumption that it is a school, but contends that "it is both a religious and charitable corporation and is entitled to the benefits of the exemptions claimed as both."

Article X, section 5, Constitution of the State of Colorado, applicable here, provides:

"Property, real and personal, that is used solely and exclusively for religious worship, for schools or for

strictly charitable purposes * * * shall be exempt from taxation unless otherwise provided by general law."

So far as is applicable and pertinent to the question involved, C.R.S. '53, 137-1-17, provides:

"The following classes of property shall be exempt from general taxation: * * * 2. The property, real and personal, that is used solely and exclusively for religious worship. * * * 4. Property, real and personal, that is used for strictly charitable purposes."

If we assume, for the purpose of this determination only, that the trial court erred in holding the property, real and personal, of this foreign non-profit corporation, authorized to do business in Colorado, was not used solely and exclusively for religious worship or for strictly charitable purposes, and therefore not exempt from general taxation under the provisions of the statute mentioned, nevertheless we are called upon to determine whether, even though plaintiff's real and personal property in this state is used exclusively for religious worship or for strictly charitable purposes, is it entitled to the same tax exemptions as a domestic corporation, the property of which is used for like purposes, or to the same tax exemption as a like corporation chartered by a foreign state but using its Colorado property for the benefit of the people of Colorado.

"The courts generally construe the constitutional and statutory provisions granting such institutions [religious and charitable] exemptions from taxation to refer and apply only to the institutions of the state, and not to those of foreign states, particularly when they do not dispense their charity or benevolence in the state, or devote their property therein to such purposes in the state. Exemption to charitable, educational, and religious organizations is predicated upon the fact that they render service to the state, for which reason they are relieved of certain burdens of taxation. The *effect of an exemption is equivalent to an appropriation.* It cannot be said to be the intent of the legislature to make

appropriation for the benefit or maintenance of foreign charities which, at best, have a remote chance only of benefiting the citizens of the state granting the exemption. And such exemptions are not ordinarily construed as applying to institutions established for the purpose of bestowing charity outside the limits of the state granting the exemption. Since the people of one state cannot be taxed for the benefit of the people of another state, there is no reason why an additional burden of taxation should be imposed on the remaining property in the state in order to benefit the people of another state, and even assuming it to be within the power of the legislature of a state to exempt the property of a foreign charitable corporation, an exemption of such property will not be presumed to have been intended in the absence of a clear legislative direction to that effect. But it seems that if an institution incorporated in one state has property devoted to charitable purposes within another state, such property will be entitled to the exemption bestowed by the tax laws of the latter state upon domestic corporations of such character, where the terms of the exemption provision are not inconsistent with such view." (Italics ours) 51 Am. Jur., 549, sec. 556.

In *Kemp vs. Pillar of Fire*, 94 Colo. 41, 27 P. (2d) 1036, the late Chief Justice Butler, speaking of tax exemptions for institutions organized not for pecuniary profit but solely for religious, educational or charitable purposes, in upholding the tax exemption in that case, had this to say:

"If the plaintiff did not carry on this educational and charitable work, it would have to be carried on by the public at the expense of the taxpayers, and doubtless that expense would exceed the taxes that the plaintiff is relieved from paying. It is on similar grounds that tax-exemption statutes are upheld as constitutional."

In *City and County of Denver v. George Washington Lodge Association*, 121 Colo. 470, 217 P. (2d) 617, the court had before it for decision a claimed tax exemp-

tion under the provisions of C.R.S. '53, 137-1-17, and therein were set forth cases in which our tax exemption statutes were strictly construed as well as those in which a liberal construction was followed. It seems to be fundamental in matters of taxation that all taxable property should bear its proportionate share of the cost and expense of government, and such is the constitutional, as well as legislative declaration in this state. There are no implied exemptions. Tax exemptions must arise directly from constitutional authorization, and until such authorization is granted, the legislative branch of the government is impotent. Courts are vested with the power and authority to construe both constitutional and statutory provisions, but it is doubtful whether they may, because of a sympathetic understanding of the laudable purpose for which such property is to be used, adopt a policy of liberal construction. On the other hand if that sympathy and understanding be lacking, then strict construction follows. We think the same rule of construction should be followed in all such cases without reference to the court's sympathy or understanding to the end that those institutions coming fairly within the constitutional and statutory provision may be afforded its benefits. It has been said that when a statute has been enacted granting an exemption from general taxation the universal rule of construction is that the statute is to be construed strictly against claimed exemptions. If, as was said in *Kemp v. Pillar of Fire, supra,* tax exemption statutes are upheld as constitutional because the work carried on by educational and charitable non-profit corporations relieve the taxpayers of the burden of such activities, then it seems reasonable to assume that the exemptions here claimed by a nonprofit foreign corporation, the great part of whose expenditures are devoted to its activities in other states and foreign countries, is not in position to meet the requirements upon which tax exemptions are granted to purely domestic corporations engaged in similar work,

or to such foreign corporations operating institutions in this state which relieve the state of some of its burdens.

In *People v. Western Seaman's Friend Society*, 87 Ill. 246, the Seaman's Society was organized under the laws of the state of Ohio and owned property in Cook County, Illinois, which it claimed was exempt from general taxation under the provisions of the Illinois statute exempting "all property of institutions of purely public charity, when actually and exclusively used for such charitable purposes, not leased or otherwise used with a view to profit. It is conceded that the objects and purposes for which the Seaman's Society was organized were such that if it was an Illinois corporation thus engaged it would be exempt under the statute. In deciding that the Seaman's Society was not tax exempt in Illinois, the court said:

"The statute must, in any event, be understood to have exclusive reference to institutions or corporations created by the laws of this State, and not to foreign corporations that may choose to locate branches in this State. It is only by that comity that exists between States that foreign corporations are permitted to transact in this State the business for which they were created. The General Assembly has manifested no intention to relieve the property situated in this State, belonging to such corporations, no matter what their objects may be, whether charitable or otherwise from the burdens of taxation, even if it possesses the power under the constitution to do so."

It may be said that in Illinois the general rule of construction is a strict one.

In *State v. Holcomb*, 85 Kan. 178, 116 Pac. 251, the constitution ordained that:

"The Legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent, and charitable purposes, * * *, shall be exempted from taxation."

There a municipality in Kansas City, Missouri, owned a water works plant in Kansas which it claimed as exempt from taxes under the provisions of the constitution, supra. With respect to this claimed exemption it was said:

"And so it may be said here that, when a city of the State of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property, not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign municipality, who is here in the capacity of a private proprietor, and whose property receives protection from the state, should contribute nothing towards that protection or should escape paying the taxes imposed upon other owners of property. It is clear that the exemptions from taxation, provided for the state and for cities and municipalities of the state, are only declaratory of the immunity that would be granted on fundamental principles of government, and that the cities and municipalities referred to in the statute and Constitution are those of our own state.

"The fact that municipalities of another state, which become proprietors in Kansas, are not accorded exemption from taxation is no basis for the claim that the interpleader is denied the equal protection of the laws or deprived of property without due process of law in violation of the Federal Constitution."

In *Methodist Book Concern v. Galloway*, 186 Ore. 585, 208 P. (2d) 319, plaintiff was a corporation organized under the laws of Ohio and licensed to do business in Oregon. It claimed exemption from general taxation under the following statutory provision:

"The following property shall be exempt from taxation: * * * (3) The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging

to such institutions as shall be actually occupied for the purposes for which they are incorporated."

Plaintiff under its charter claimed to be a benevolent and charitable organization not for profit, and in determining the action the supreme court apparently considered that purpose as conceded. The court quotes at length from 51 Am. Jur., Taxation, 556, and cites in support thereof *People v. Western Seaman's Friend Society, supra.* Excerpts from the opinion affirming the trial court's determination that the plaintiff foreign corporation not for profit, engaged in benevolent and charitable work in Oregon is not entitled to an exemption are as follows:

"The circumstances which justifies the granting of tax exemption to a domestic corporation, while withholding it from one organized under the laws of a sister state is not the fact that one corporation is domestic and the other foreign. The basis for the distinction is found in the fact that the domestic charitable corporation performs a function in the state of its incorporation which is of direct interest to that state and its people. It is relieving the state and its people of burdens which might otherwise be imposed upon them. Such corporations are peculiarly subject to legislation and judicial regulation and guidance. * * * It requires no citation of authorities to support the statement that this state bears a heavy burden of responsibility for the care of the blind, the old and the needy, and has a vital interest in the proper administration of public charities and of charitable corporations operating in the state.

" 'Exemptions to charitable and educational institutions are bottomed on the fact that they render service to the state, and thus relieve the state and its people of a burden which they otherwise would have to assume. * * *' City of Cincinnati v. Commonwealth, ex rel. Reeves, 292 Ky. 597, 167 S.W. 2d 709, 715."

The syllabus, supported by the opinion, reads:

"Statute which exempts domestic charitable corpora-

tions but not foreign charitable corporations from taxation does not violate equal protection clause of federal constitution or state constitution provision requiring uniform taxes."

*In Re Park College*, 170 Okla. 132, 39 P. (2d) 105, the court had before it the problem of determining whether Parks College of Parkville, Mo., a church college and a charitable and religious institution, was entitled to an exemption from general taxes of its property held in Oklahoma. The trial court determined adversely to Park College, and the case was reviewed by the supreme court. The applicable provision of the Constitution of Oklahoma is Article X, section 6, which reads in part as follows:

"All property used for free public libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes * * * shall be exempt from taxation; * * *."

The court, in applying this constitutional provision to the facts of the case, said:

"We think it to be but a fair interpretation or construction that a provision of the State Constitution or act of the Legislature granting powers, privileges, or immunities to educational, religious, or charitable institutions and the property of such institutions must be held to apply only to such institutions created under the authority of this state or located and operated within the state from which the citizens of the state would receive a benefit through such concession. A foreign institution or corporation cannot claim the same privileges in their demands to transact business in this state as domestic institutions, and the state is not bound to give its exemption privileges on taxation to such institutions unless the Constitution or statute plainly and expressly grants it."

It is interesting to note that Illinois, in determining an inheritance tax was lawfully executed upon a devise

and bequest to the Woman's Home Missionary Society of M. E. Church, cited *People v. Western Seaman's Friend Society, supra,* to support its determination that the bequest and devise was taxable. With reference thereto it said:

"There is no question that the appellant is a benevolent and charitable corporation, and that all funds received by it are expended for benevolent and charitable purposes, as aforesaid [and it expends a fair proportion of its income upon its charitable institutions in the State of Illinois]. If it were a corporation of this state, there could be no doubt as to its right of exemption from said tax. The amendatory act contains no language that indicates that it was the legislative intent that its provisions should apply to corporations created under the laws of another state of the United States. The rule of construction accepted by this court is that an act of the Legislature granting powers, privileges, or immunities to corporations must be held to apply only to corporations created under the authority of this state, and over which this state has the power of visitation and control, unless the intent that the act shall apply to other than domestic corporations is plainly expressed in the terms of the act. (citing numerous cases, among which is People v. Western Seaman's Friend Society, supra.) Under these authorities it is clear that appellant is not exempt from the payment of an inheritance tax on its succession to the property under the will. The rule is, also, that exemption statutes of taxation are to be construed strictly. * * * .

" * * * Foreign corporations cannot, therefore, claim the same privileges in their demands to transact business in this state as domestic corporations, and it has ever been held that a state may contract with them or charge them for the privilege of transacting their business within its borders. It is equally clear that a state is not bound to give its exemption privileges on taxation to foreign corporations, and foreign corporations can

claim no such exemption, unless the statute plainly and expressly grants it." *People v. Woman's Home Missionary Soc. of M. E. Church,* 303 Ill. 418, 135 N.E. 749.

See also *People v. First Nat'l Bank of Chicago,* 364 Ill. 262, 4 N.E. (2d) 378.

In *State v. City of Hudson,* 231 Minn. 127, 42 N.W. (2d) 546, the court had before it the trial court's judgment holding that the part of an interstate bridge owned by plaintiff, a municipality of Wisconsin, was not exempt from personal property taxes. It is stated in the opinion that the sole question for determination is whether a municipality of a foreign state owning and operating a toll bridge located partly in such state and partly in Minnesota is entitled under a constitutional provision exempting from taxation public property used exclusively for any public purpose to exemption from taxation of the portion of such bridge located in the state. Relative thereto the court said:

"It is difficult to comprehend how the exemption could be construed to cover property located in this state belonging to foreign states and their political subdivisions. After all, the state through its constitution was legislating with respect to matters of which it had jurisdiction and which affected its economy. Since that is true, since exemption from taxation of public property involves in the final analysis a recognition of immunity of the sovereign from taxation, since no foreign state or any municipality located therein can have any sovereign or public character within the territorial boundaries of this state, and since exemption or immunity from taxation involves the imposition upon other property of a proportionate additional tax burden and thus exemption of property located here belonging to foreign states and their political subdivisions would cause other owners of property here to be taxed for the benefit of another state and its municipalities (see 51 Am. Jur., Taxation, §561), it seems clear that the words 'public property used exclusively for any public purpose' in

Minn. Const. art 9, §1, were intended to mean the public property of the state of Minnesota and of the political subdivisions thereof used for public purposes, and not the property of foreign states and their political subdivisions."

It would unduly prolong this opinion to quote from other decisions which support our conclusion that it was not the intention of the people of the state of Colorado by adoption of its constitutional provision (Article X, section 5) or by legislative act to relieve a non-profit foreign corporation, be it charitable, religious or educational, of the payment of its general taxes and thereby increase the tax burden upon its resident taxpayers where, as here, said foreign corporation cannot fairly be said to ease any of the burdens of the taxpayers of the state of Colorado. See: *Appeal of West Indies Mission, a Non-Profit Corporation,* 180 Pa. Super. 216, 119 Atl. (2d) 550; *City of Cincinnati v. Commonwealth,* 292 Ky. 597, 167 S.W. (2d) 709; *Lloyd Library & Museum v. Chipman,* 232 Ky. 191, 22 S.W. (2d) 597; 34 A.L.R. 648 (5).

Plaintiff's counsel call our attention to *Appeal of Infants Welfare League Camp, Inc.,* 169 Pa. Super 81, 82 A. (2d) 296. It will be observed that this is an opinion of an intermediate appellate court, and on the question presented here no Pennsylvania or other supreme court decisions are cited. We do, however, call attention to *Appeal of West Indies Mission, a Non-Profit Corporation, supra,* which we believe more nearly applicable to the questions presented in the instant case.

Here we are concerned with a tax exemption asserted by a foreign non-profit, charitable and religious corporation. We are of the opinion that our Constitution and statute granting exemption from taxation to certain religious, charitable and educational non-profit corporations should, in the absence of plain indications to the contrary, be held to apply only to corporations created by the state itself and over which it has control, or to

those corporations whose property in the state of Colorado is operated for the benefit of the people of this state. It is inconceivable that the framers of our Constitution would make an appropriation, i.e., a tax exemption, to foreign non-profit institutions or corporations by the imposition of an additional tax burden on its own taxpaying citizenry. Non-exemption to such institutions is the natural and required interpretation and construction of such provisions in the absence of a contrary intent specifically appearing on the face of the legislation. The people, as well as the legislature, in dealing with such cases are dealing with fundamental sovereignty, and in creating rights, duties and obligations, it may also limit, define and control them. While it is the policy of society to encourage education, benevolence and charity, we do not believe it to be a proper function of the state to go outside its own borders and devote its resources to the support and education, religion and charity for the benefit of the human race. Such would be a direct diversion of the state's resources at the expense of its resident taxpayers. We hold that those foreign non-profit corporations operating educational, religious or eleemosynary institutions in this state for the benefit of the people of this state are not by anything we have said here deprived of the tax exemptions heretofore granted by our Constitution and statutes, nor should any foreign non-profit corporation operating in Colorado but not primarily serving the people of this state qualify for such exemptions simply by the device of changing into a Colorado domestic corporation.

We so construe our constitutional and statutory provisions, supra, so that it is wholly immaterial whether an institution or a non-profit corporation is organized under the provisions of ours or a sister state if its property in the state of Colorado is used "solely and exclusively for religious worship, for schools or for strictly charitable purposes" thus relieving the taxpayers of the state of Colorado of the burden and expense of

providing these enumerated advantages for its citizens. Such institution or non-profit corporation, either domestic or foreign, is entitled to the constitutional and statutory tax exemption.

We hold that a resident or non-resident, non-profit, educational, religious and charitable corporation which is not using its property in this state for the benefit of the people of Colorado is not exempt from the payment of general taxes on property held by it within this state.

The judgment, accordingly, is affirmed.

MR. JUSTICE SUTTON does not participate.