## No. 27063

**General Conference of the Church of God - 7th Day, a not-for-profit corporation v. Raymond E. Carper, Property Tax Administrator, Division of Property Taxation; and Board of Assessment Appeals, State of Colorado as a board and the individual members thereof**

(557 P.2d 832)

Decided December 6, 1976.

Reynard, Dorwart & Booms, William F. Reynard, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Mary J. Mullarkey, First Assistant, for defendants-appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This appeal is from a judgment of the Denver District Court affirming a ruling of the Board of Assessment Appeals holding that property in Colorado held by the General Conference of the Church of God — 7th Day was not entitled to an exemption from property taxes. We reverse and remand for further consideration.

The record before us shows that the General Conference of the Church of God — 7th Day (hereinafter called the Conference) is a religious organization of some 5,000 members, 200 of whom, or 4%, reside in Colorado. Its objectives include the "diffusing of religious knowledge," promoting "principles of morality, benevolence and charity," and "the education of mankind in general." Prior to 1972, the Conference operated administrative headquarters in Denver. This property was completely exempted from property tax.

In 1972 the main administrative and publishing activities of the group were moved from Missouri to Colorado, and a new facility was constructed on 4.408 acres of land in Adams County. The Tax

Administrator initially granted an exemption of 37% of the value of the land, this constituting his assessment of the percentage attributable to administrative functions. Upon reconsideration, however, the exemption was totally denied.

The Tax Administrator concluded that the case of *Young Life v. Chaffee County*, 134 Colo. 15, 300 P.2d 535 (1956), was controlling and that there was insufficient "benefit" to the people of Colorado to justify the exemption. The Board of Assessment Appeals and the district court affirmed.

## I.

Article X, Section 5 of the Colorado Constitution provides that:
"Property, real and personal, that is used solely and exclusively for religious worship, for schools or for strictly charitable purposes . . . shall be exempt from taxation, unless otherwise provided by general law."
1967 Perm. Supp., C.R.S. 1963, 137-2-1(6)[1] contains the legislative definition of the classes of property subject to the exemption.[2] Colorado's policy of tax exemptions for all religious and charitable property has counterparts in all 50 states.

In *Young Life v. Chaffee County, supra*, this court construed the purpose and extent of the constitutional exemption and upheld the denial of a property tax exemption to a camp operated by an out-of-state religious organization. Considering the fact that only 2% of the people who used the camp were Colorado residents, the court held that:
"a resident or non-resident, non-profit, educational, religious and charitable corporation which is not using its property in this state for the benefit of the people of Colorado is not exempt from the payment of general taxes on property held by it within this state." *Id.* at 33.

To the extent that *Young Life* established some requirement of benefit to the people of the state of Colorado as a condition for the property tax exemption of *religious* organizations, it is hereby overruled. While such "social benefit" analysis may have continuing validity in the determination of *charitable* exemptions, *see WHYY, Inc. v. Borough of Glassboro*, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968), it has no place in the state's evaluation of its treatment of bona fide religious groups. This conclusion is self-evident from the rationale for the grant of a tax exemption that was articulated in *Young Life*. There the court concluded that the purpose of the exemption was to relieve taxpayers of obligations that they would otherwise have to perform and quoted with

---

[1] Now section 39-3-101(1)(e)(I), C.R.S. 1973.
[2] We note that the legislative classification of exemptions religious to property has been expanded since *Young Life* to include properties not then eligible for exemption. *Compare* C.R.S. 1953, 137-1-17. Our conclusions here are not premised on statutory interpretation, and it is therefore unnecessary for us to consider the impact of this new legislation.

approval from *Kemp v. Pillar of Fire*, 94 Colo. 41, 27 P.2d 1036 (1933):
"If the plaintiff did not carry on this educational and charitable work, it would have to be carried on by the public at the expense of the taxpayers and doubtless the expense would exceed the taxes that the plaintiff is relieved from paying. It is on similar grounds that tax-exemption statutes are upheld as constitutional." *Young Life, supra* at 23.

This rationale requires that a distinction be made between charitable and religious exemptions; a religious group does not have as a fundamental purpose the providing of services which the state would otherwise have to provide since the state is constitutionally prohibited from such religious involvement. *See* Note, 29 Rocky Mtn. L. Rev. 143 (1956-57).

The difficulty of establishing "benefit" to the people of Colorado in the context of religious worship is evident from the manner in which statistics were utilized in this case. Neither the percentage nor absolute number of members of a religious group resident in Colorado can alone be dispositive of their treatment. It was argued that only 4% of the members of the Conference reside in Colorado. Certainly a far smaller percentage of adherents to any of the Protestant or Catholic denominations live in the state. Further, if those 200 Colorado residents constituted the entire religious group we could not, for that reason alone, deny them a constitutionally mandated exemption. Numbers alone can never serve to evaluate the substance or essence of a religious faith.

Nor do tax exemptions for religious organizations, in and of themselves, violate the Establishment clause of the federal constitution. In *Walz v. Tax Commission* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the United States Supreme Court upheld the constitutionality of tax exemptions for a religious organization. In so doing the Supreme Court directly rejected the requirement of a "social benefit":
"We find it unnecessary to justify the tax exemption on the social welfare services or 'good works' that some churches perform for parishioners and others — family counselling, aid to the elderly and the infirm, and to children. Churches vary substantially in the scope of such services. . . . To give emphasis to so variable an aspect of the work of religious bodies would introduce an element of governmental evaluation and standards as to the worth of particular social welfare programs. . . ." *Id.* at 674.

The difficulty and danger in the evaluation of the "benefit" of a religious group is clear, and we expressly reject the reliance by the Tax Administrator on such a concept in his evaluation of the availability of the property tax exemption.

Nothing we have said here, of course, relieves a religious organization from the obligation to otherwise satisfy the criteria for a valid religious exemption.

## II.

■ Also involved here is the question of whether publication activities of a religious denomination are as such excluded from an exemption as not being within the constitutional touchstone for exemption, *i.e.*, "religious worship." While tax exemptions are normally subject to strict construction and limitation, this court has always been receptive to exemptions implementing the constitutional policy of support for charitable and religious endeavors. *See El Jebel Ass'n v. McGlone*, 93 Colo. 334, 26 P.2d 108 (1933); Note, 6 Rocky Mtn. L. Rev. 293 (1933-34). Not only has this court broadly interpreted the classes or property subject to exemption, *see, e.g., Denver Turnverein v. McGlone*, 91 Colo. 473, 15 P.2d 709 (1932); *Stanbro v. Baptist Home Ass'n of Colo. for the Aged*, 172 Colo. 572, 475 P.2d 23 (1970), we have also extended exemptions to property that was incidental to the furtherance of the objectives of the exempt group. *See Colorado Tax Comm'n v. Denver Bible Institute*, 94 Colo. 402, 30 P.2d 870 (1934); *Kemp v. Pillar of Fire, supra.*

Here the connection between the constitutional policy and the Conference's practice is direct. In its findings of fact, the Board of Assessment Appeals concluded that:

"One of the major ecclesiastical and administrative functions carried on by the national staff is to prepare and publish for the use of the members of the Conference various religious publications. The printing of such materials is a part of carrying on the religious work of the Conference, including worship, evangelism and religious education."

The relationship between literature and religion is intimate and historic. In certain circumstances the publication of religious literature can be as much an aspect of religious worship as prayer itself.

While the question of whether this form of "worship" is entitled to a tax exemption has not heretofor been considered by this court, it has been decided in other states. Interpreting constitutional and statutory provisions similar to our own, the supreme courts of Illinois,[3] Ohio,[4] Massachusets,[5] and Indiana[6] have concluded that non-profit publication by religious or charitable groups may be entitled to tax exemption.

Since the Tax Administrator's decision not to exempt the property involved here was predicated entirely on *Young Life v. Chaffee County, supra,* which we have today overruled insofar as it applies a social benefit theory to religious institutions, we must remand the matter to him for his

---

[3] *Congregational Sunday School & Publishing Soc. v. Board of Review,* 290 Ill. 108, 125 N.E. 7 (1919).

[4] *American Issue Pub. Co. v. Evatt,* 137 Ohio St. 264, 28 N.E.2d 613 (1940).

[5] *Assessors of Boston v. Lamson,* 316 Mass. 166, 55 N.E.2d 215 (1944).

[6] *State Board of Tax Commissioners v. Warner Press, Inc.,* 254 Ind. 183, 258 N.E.2d 621 (1970).

application of the principles here announced to the property in question.

The judgment is reversed and the matter remanded to the district court for remand to the Tax Administrator for the purpose of determining the exemption applicable to the property involved in accordance with the views expressed herein.