## Boy Scouts of America v. Board of Assessment

*MacElree, Platt, Marrone & Harvey,* for appellant.
*Theodore O. Rogers,* for respondent.

GAWTHROP, P. J., May 13, 1963.—Valley Forge Council, Inc., Boy Scouts of America, has appealed from assessment for county and local tax purposes of its headquarters and administration building comprising six and three-tenths acres with improvements situate at the southeast corner of Valley Forge Road and the Pennsylvania Turnpike in Tredyffrin Township, Chester County. In October, 1962, the Chester County Board of Assessment and Revision of Taxes assessed the premises at $96,084, representing $4,848 for the land, and $91,236 for improvements. Thereafter, the owner appealed from the assessment but, upon consideration, the board of assessment and revision on December 10, 1962, rejected the appeal and sustained the assessment. After hearing and argument the matter is before us for decision.

The evidence shows that Valley Forge Council, Inc., is a nonprofit corporation formed under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §2851-1, whose stated purpose is "to promote, supervise and administer the educational and recreational program of the Boy Scouts of America for character development, citizenship training, and physical fitness within the territory covered by the charter granted by the National Council of the Boy Scouts of America; and in accordance with the Federal Charter

of the Boy Scouts of America, the constitution and by-laws of the National Council and the policies and regulations thereof as set forth in its official publication;

"And further, to share with the national council responsibility for providing adequate leadership, maintaining standards of the Boy Scout movement, protecting its badge and official insignia against those not duly registered as scout and scout officials, and for making the benefits of the movement available to all boys of the territory served by this corporation.

"The corporation does not contemplate pecuniary gain or profit, incidental or otherwise, to its members."

The council thus directly affiliated with and chartered under the national organization has for about 50 years maintained its headquarters and administrative offices in rented office space in Western Savings Fund Building, Philadelphia. Some three years ago, after a study of the question whether to continue to occupy those quarters, or to rent others in a Philadelphia suburban area, or to purchase land and build its own headquarters offices, it determined to and did purchase the land in question and erected its own building. A major reason for doing so was the need for adequate space which would have cost about $30,000 rent per year as against the $17,000 yearly rent then being paid in Philadelphia.

The council's operations cover Delaware and Montgomery Counties in Pennsylvania; Chester County is not included. However, it established its present headquarters at a location in the extreme eastern end of Chester County, a short distance from both the Montgomery County and Delaware County borders, and constructed a headquarters and administration building at a cost of $250,000 upon land, the cost of which, plus architect's fees in the construction, amounted to $65,000. The cost of the land was met by contributions of four individuals of $15,000 each for the land, and the

fee for architect's services was paid from an additional $5,000 contributed by the same group of individuals. Construction cost of the building was financed by a $250,000 bank loan, to be reduced by payment of $1,000 per month by the council, and by an additional $10,000 a year committed by an individual member of the board of the council. Funds to meet the council's loan payments and operating expenses are obtained in equal one-half parts by contributions from ten separate United Fund organizations and from sustaining memberships in the council on the part of parents of Boy Scouts and friends of the scouting movement in the two-county area.

The headquarters building houses 28 members of the professional staff, including 18 district executives and various field directors, and 25 female clerical workers, all of whom are full time employes. The annual payroll is $200,000.

The members of the professional staff work with 11,500 unpaid volunteers in carrying out the scouting program by organization and reorganization of units, training of leaders and carrying out activities programs.

Part of the clerical staff is a secretarial pool servicing the professional staff and the other part handles registrations, training records, advancement records, enrollment records, sustaining membership records, bookkeeping and accounting. The whole building is in use for those purposes except for a small apartment consisting of a living room, bedroom, kitchen and bath occupied with his wife by a maintenance employe whose duties are general maintenance work in and immediately outside the building, cleaning the building and polishing floors. No rent is charged for the apartment, but its occupancy, together with a wage or fee, constitute the man's compensation for services.

A headquarters and administration building is absolutely essential for carrying out the council's program.

In addition to the activities above set forth, the unpaid volunteeer board of the council, consisting of 80 members, meets in the building in alternate months. The Camp Council Committee, Training Committee, Finance Committee, and Organization Extension Committee all meet regularly in the building, as well as small groups for the purpose of training personnel, to the extent that the building is used two or three nights weekly throughout the year. All members of the board, committees and groups are unpaid volunteers.

Boy Scouts themselves and members of various Scout Troops do not meet in the building or receive training within its walls. Neither do they conduct camping activities on the premises. However, the council operates and administers through the personnel who occupy the building many camp activities in Valley Forge Park nearby; one of which, the Valley Forge Pilgrimage and Encampment, involves 7,000 boys, and another, the Scouting Trails Program in the Park, involves 14,000 boys. Direct services to boy scouts in two summer camps administered and operated from the headquarters building are provided; one at the Delmont Camp in Upper Montgomery County and the other in a camp operated jointly with the Philadelphia Council at Ressica Falls Scout Reservation, near East Stroudsburg, Pa. The number of boy campers serviced from the headquarters is 7,000 in summer time and nearly 11,000 in the fall, winter and spring months.

The council makes available to boys and scout leaders scouting badges and insignia at various stores in the area which handle scouting supplies and equipment, as well as some thereof in the headquarters building. The badges and insignia are supplied by the national council and some of the insignia, being re-

stricted, are handled through the headquarters for purpose of control. A small charge is made for the badges and insignia.

Registration fees of 50 cents and the dues paid by Boy Scouts are not received by the council. The former go to the national council for its support and the latter are used by local troops, packs or posts for their own operating expenses. Under that arrangement, the national council refrains from conducting fund-raising programs within the Valley Forge council area.

The tax exemption claimed by the council is controlled by the provisions of article II, sec. 202(a)(3) of The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, as amended, 72 PS §5453.202(a)(3) which grants exemption to:

"All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

The question presented is whether the council headquarters and administration premises is a "purely public charity" founded and maintained to a sufficient degree by public or private charity to entitle it to tax exemption under article IX, sec. 1, of the Pennsylvania Constitution and the cited provisions of the Act of 1943. This is a mixed question of law and fact. For the property owner to obtain the claimed exemption from taxation it must affirmatively show that the entire premises "(1) is one of 'purely public charity'; (2) was founded by public or private charity; (3) is maintained

by public or private charity": Woods School Tax Exemption Case, 406 Pa. 579, 583-4.

The record shows clearly that the headquarters and administration premises was founded by charitable contributions making possible purchase of the land, construction of the building and payment of the necessary architect's fees. It shows equally clearly that the premises are maintained by charitable contributions, half of which come from ten separate United Fund organizations and the other half from sustaining memships in the council. The third fact necessary to be established is that the operation of the premises is one of purely public charity. We do not understand the county to, and indeed it hardly could, question seriously the fact that the operation of Valley Forge Council, Inc., or, of the National Council, is a purely public charity: Camden County Council, Boy Scouts of America v. Bucks County, 13 D. & C. 213.

On the contrary, as we understand it, the county's argument is that the headquarters premises, being physically separated from the actual scouting activities of the council, does not in the terms of the statute qualify as ". . . grounds thereto annexed and necessary for the occupancy and enjoyment of the same, . . ." But it does not follow that the physical separation of the headquarters from the camping and other scouting activities in the council area defeats the claim of exemption.

In our view, a headquarters and administration building is as necessary a part of the operation of the council's purposes and activities shown by this record, as is the residence of the president or chancellor of a college or university: University of Pittsburgh Tax Exemption Case, 407 Pa. 416, and numerous cases therein cited. From the nature of the council's activities, Boy Scout troop operations are dispersed over the whole of the council's two-county area and, of neces-

sity, its troop, camping and trailing activities are carried on in such places near to or far removed from the headquarters, as may be available and physically appropriate to the nature of such activities.

The real nub of the present controversy is the use to which the headquarters premises is put, and the burden is upon the council to establish the primacy of the use of the premises in furtherance of the general purposes of the council's activities. It is the use, not the building or premises, which defines the exemption, and the use made of the premises is a presently existing fact: University of Pittsburgh Tax Exemption Case supra, at 422; Mullen v. Commissioners of Erie County, 85 Pa. 288, 292.

Such a headquarters necessarily performs a real function, tangible as well as intangible, in the conduct of the council's activities and fulfillment of its purpose, and even if its utility to the objectives and purposes of the council were incapable of exact measurement and evaluation, which we think it distinctly is not, that utility is nevertheless real and valuable: University of Pittsburgh Tax Exemption Case supra, 424.

The word "necessary" as used in the statute does not mean an absolute necessity but, rather, a reasonable necessity, or what is convenient and useful. There appears from the record no question of the premises being either employed as a means of acquiring revenue, or held merely as an idle or unproductive asset, so as not to be necessary to the charitable activity. The ultimate test of taxability of the real estate of a charity lies in a determination of the use to which it is being put. If the property is actually and principally used in the charitable activity, it is "necessary" within the meaning of the statute and is exempt from taxation: Lycoming House v. Board of Revision of Taxes of the City and County of Philadelphia, 164 Pa. Superior Ct. 538; Academy of Natural Sciences of Phila-

delphia v. City of Philadelphia, 6 D. & C. 2d 145, 149.

There is no evidence that the entire revenue of the council is used for any purpose other than its support and to increase its efficiency and facilities, and to the repair and necessary increase of its grounds and buildings. It receives nothing from either registration fees or the dues of individual boy scouts. It merely controls distribution of insignia supplied by the national council and channeled through Valley Forge Council, Inc., into the hands of individual boy scouts, leaders and various stores and distribution outlets. It receives no rent from the small apartment in the building. All of its income is devoted to its charitable purposes. The council's activities therefore satisfy the proviso contained in the statute.

Applying the ultimate test of taxability, it is clear that the council headquarters and administration premises is actually and principally used in its charitable activities, is necessary within the meaning of the statute, and is therefore exempt from taxation.

*Order*

And now, May 13, 1963, it is ordered, adjudged and decreed that the present assessment of the headquarters and administration building premises of Valley Forge Council, Inc., Boy Scouts of America, is null and void and the property in question is hereby adjudged to be exempt from such assessment within the meaning of the tax exemption laws.