## No. 13,017.

KEMP ET AL. *v*. PILLAR OF FIRE.

(27 P. [2d] 1036)

Decided December 11, 1933.

Mr. HARRY BEHM, Messrs. GABRIEL, MILLS & MILLS, Mr.

J. Warner Mills, Jr., Mr. Clarence L. Ireland, Attorney General, Mr. Fred A. Harrison, Deputy, Mr. E. J. Plunkett, Assistant, for plaintiffs in error.

Mr. Harry C. Riddle, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

Pillar of Fire, a corporation, referred to herein as the plaintiff, obtained a judgment against the county commissioners, the assessor and the treasurer of Adams county, referred to herein as the defendants, declaring certain property to be exempt from taxation, ordering the defendants to remove the property from the list of taxable property and to refund to the plaintiff money theretofore paid under protest for taxes.

The plaintiff is a corporation organized, not for pecuniary profit, but solely for religious, educational and benevolent purposes. According to the affidavit of incorporation, Pillar of Fire was organized "for the purpose of building up the Kingdom of God in the earth through the preaching of the gospel; the publication and circulation of religious literature; the establishment and maintenance of schools for both secular and religious instruction, with all necessary adjuncts for their support and efficiency; the establishment and maintenance of churches for the spread of the gospel; the engaging in works of education, benevolence, charity and missions everywhere and the building up of Christian character among all people." While the use of the property, and not the character of the owner, is the test of the right to exemption, the character of the owner sheds an important side light on the nature of the use. *State v. Board of Assessors,* 52 La. Ann. 223, 228, 26 So. 872.

The plaintiff owns and conducts Belleview College, situated in Westminster (land platted into blocks and

lots) in Adams county. The plaintiff admits to the college and educates children and young men and women without discrimination as to race, color or creed. A great majority of the students are entirely without money or other financial resources. A few are referred to as "pay students," but as a matter of fact only a small percentage of their tuition and board is paid in money, such students being either wholly or partially dependent upon the philanthropy of the plaintiff. In 1930 and 1931 there were 73 students. Of these only 12 were "pay students," but they paid only "a small portion for their board and tuition." The plaintiff owns many lots in Westminster. The lots constituting the college campus aggregate 40 acres of land. The building and campus concededly are exempt from taxation, and they have been so treated. In addition to the campus, the plaintiff owns other lots, aggregating about 200 acres of land, situated close to the campus. This is the property whose exemption is challenged by the defendants. Part of that land is planted to fruit trees and garden truck, all of which are used exclusively for college purposes and for the sustenance of the students. Part is planted to corn, wheat, alfalfa and oats, used principally as feed for the plaintiff's live stock and chickens, which are kept for the use of the college. Some of the produce, however, is sold for cash, which is used exclusively in supporting and maintaining the college. Part of the land is leased to tenants for a small rental in cash, which is used exclusively in paying the operating expenses of the college. A few acres were summer-fallowed, and no crops were raised thereon during the year next prior to the commencement of the suit. However, it is kept exclusively for the use of the college. The entire proceeds of the land are used exclusively in the support and maintenance of the college and the students. According to the testimony of the treasurer of the college, the money derived from tuition and crops does not pay one-fourth

of the maintenance cost, the balance being made up by donations, the sale of publications, etc. The teachers do not receive any salary. The witness White testified: "Students are taught, as well as the other officers and helpers, to look to God for their supplies, and somehow they are not disappointed. It comes from one way or another, from friends, and if they are not provided for, the institution provides their clothing and whatever is necessary for them to have."

Section 5 of article 10 of the state Constitution provides: "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, for schools, or for strictly charitable purposes, * * * shall be exempt from taxation, unless otherwise provided by general law." Section 7198 of the Compiled Laws provides: "The following classes of property shall be exempt from general taxation, to-wit: * * * Second. Lots with the buildings thereon, if said buildings are used exclusively for religious worship. Third. Grounds with the buildings thereon, if said buildings are used exclusively for schools, other than schools held or conducted for private or corporate profit. Fourth. Lots with the buildings thereon, if said buildings are used for strictly charitable purposes."

In Colorado the rule, prevailing in some states, that tax-exemption provisions should be construed strictly in all cases has not been adopted. In *Bishop and Chapter, etc. v. Treasurer of Arapahoe County,* 29 Colo. 143, 68 Pac. 272, this court said: "The general rule is, that exemptions from taxation are strictly construed, but this rule is not applied with full vigor to the character of exemptions under consideration. In other words, provisions exempting property used for educational purposes are less strictly construed than those exempting property used for ordinary gain or profit." In *Bishop and Chapter, etc. v. Treasurer of City and County of Denver,* 37 Colo. 378, 86 Pac. 1021, we applied the same

liberal rule of construction in holding property used for charitable purposes to be exempt. See also: *Colorado Seminary v. Board of County Commissioners of Arapahoe County*, 30 Colo. 507, 71 Pac. 410; *Pitcher v. Miss Wolcott School Association*, 63 Colo. 294, 165 Pac. 608; *Horton v. Colorado Springs Masonic Building Society*, 64 Colo. 529, 173 Pac. 61; *Board of County Commissioners of Rio Grande County v. San Luis Valley Masonic Association*, 80 Colo. 183, 250 Pac. 147; *Denver Turnverein v. McGlone*, 91 Colo. 473, 15 P. (2d) 709; *El Jebel Shrine Association v. McGlone*, 93 Colo. 334, 26 P. (2d) 108. In the El Jebel case we said: "The decisions of the courts of last resort of the states of the Union are not uniform as to the scope and effect of statutory and constitutional provisions in substantially the same or similar language contained in our Constitution and statute upon this subject. The courts of some of the states interpret such provisions strictly and others liberally. Our own decisions unquestionably are liberal." And we also used the following language which is pertinent here: "The argument of counsel for the defendants in error, which, in substance, is a plea for the adoption by this court of the strict rule of construction, which, if approved, would be contrary to our previous decisions on this important subject, does not meet with our approval, and we are not disposed to depart from such decisions upon the controlling question involved in this case."

Applying the same broad, liberal rule of construction adopted by the court in cases of this character, we conclude that the property in question is exempt. To confine the exemption to the building and the campus would seriously cripple the institution in carrying out its laudable purpose. The entire property constitutes a unit. It is reasonably necessary to effect the objects of the institution, and it is used solely for that purpose. As we said in *Bishop and Chapter, etc. v. Treasurer of Arapahoe County*, *supra*: "If the use of property utilized for a school is limited to that which is indispensable

for this purpose, the extent to which institutions of this character are benefited by exemption from taxation is confined to the narrowest possible limits, and every use which could be dispensed with and yet permit a school to be conducted which might be so termed in name, would subject the property so used to taxation. Such a construction would be too narrow, and fall far short of expressing the intent of the people and legislature with respect to schools. The fundamental object of the law was to exempt property used for school purposes from taxation. To carry out this design, the uses permissible must necessarily embrace all which are proper and appropriate to effect the objects of the institution claiming the benefits of the exemption."

The fact that some money is received from a few students as part payment for their tuition, board and lodging, and that a small rental is received for some of the land does not, in the circumstances, deprive the property of its exempt character. *Board of County Commissioners of Rio Grande County v. San Luis Valley Masonic Association, Supra; Bishop and Chapter, etc. v. Treasurer of City and County of Denver, supra; Pitcher v. Miss Wolcott School Association, supra; Horton v. Colorado Springs Masonic Building Society, supra; Denver Turnverein v. McGlone, supra.*

If the plaintiff did not carry on this educational and charitable work, it would have to be carried on by the public at the expense of the taxpayers, and doubtless that expense would exceed the taxes that the plaintiff is relieved from paying. It is on similar grounds that tax-exemption statutes are upheld as constitutional. 26 R. C. L. p. 316.

The judgment is affirmed.

Mr. Justice Campbell did not participate.