Opinion by
Judge Mencer,
This is an appeal by the Wayne County Board of Assessment from an order of the Court of Common Pleas of Wayne County granting real estate tax exemption status to approximately 1,399 acres of land owned by the Rolling Hills Girl Scout Council (Rolling Hills).
The testimony in the record reveals that Rolling Hills, a New Jersey nonprofit corporation, purchased three large parcels of land in Buckingham Township for a consideration of $150,000. At the time of this litigation, approximately $86,000 remained outstanding on the property’s mortgage. After the purchase, Rolling Hills spent an additional $359,000 erecting further facilities for camping in one area designated on the Wayne County tax maps as Property No. 154-12-NT.l. This area consisted of approximately 25 acres.
On August 20, 1973, the Wayne County Board of Assessment ruled that the property in question is taxable. Rolling Hills then appealed “from the adjudication of the Wayne County Board of Assessment . . ., declaring the property in Buckingham Township No. 154-12-NT.l to be taxable . . . .” The Court of Common Pleas of Wayne County, after a de novo hearing, reversed and held that all of the 1,399 acres of land are tax exempt.
Initially, we must consider the issue of whether or not, when an appeal is taken from an assessment on one tract, a court may decree the other lands of a property *489 owner, on which no appeal from an assessment was taken, to be tax exempt also. We think not.
It is clear that Rolling Hills was only appealing the Board’s adjudication as to the 25 developed acres of land. No doubt Rolling Hills was quite pleased when the lower court ordered exemption for 1,399 acres. However, it is clear that the jurisdiction of the common pleas court in this exemption case was limited to only those matters properly raised before it. The lower court was without power to consider and rule upon assessments, not appealed, concerning other tracts of land. See Grandview Cemetery Association v. Allegheny County Board of Property Assessment, 209 Pa. Superior Ct. 109, 224 A. 2d 780 (1966). The proceéding before the lower court was a statutory proceeding and required the statute to be followed in a strict manner.
Just as a court deciding an appeal pursuant to The General County Assessment Law[1] may not exceed its authority by adjudicating matters not properly before it, a court deciding an exemption appeal pursuant to The Fourth to Eighth Class County Assessment Law,[2] which is applicable here, cannot exceed its authority in adjudicating matters not properly before it. Each assessment must be appealed in accordance with the procedure established by the statute. Grandvieio Cemetery Association, supra.
Having rejected the lower court’s adjudication concerning approximately 1,374 acres, we are still left with a determination as to whether or not the lower court abused its discretion in allowing an exemption for the remaining 25 acres of Tract No. 154-12-NT. I.[3]
*490 Article 8, Section 2(a) (v) of the Pennsylvania Constitution provides:
“ (a) The General Assembly may by law exempt from taxation:
“(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.”
The General Assembly has provided:
“(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:
“(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprise.” Act of May 21, 1943, P. L. 571, art. II, §202, as amended, 72 P.S. §5453.202.
*491 Therefore, the principal legal question is whether or not Rolling Hills has borne its burden of showing that it is a purely public charity and that it was founded and is maintained to a sufficient degree by public or private charity to entitle it to exemption. Woods Schools Tax Exemption Case, 406 Pa. 579, 178 A. 2d 600 (1962). This it has done.
The record shows clearly that the premises were purchased and improved with charitable contributions. No charges or fees collected from the girls were ever directed to the capital project itself. Neither can it seriously be disputed that the Rolling Hills Girl Scout Council is a purely public charity. See Boy Scouts of America v. Board of Assessment, 31 Pa. D. & C. 2d 285 (1963); Camden County Council, Boy Scouts of America v. Bucks County, 13 Pa. D. & C. 213 (1929).
The Board’s basic contention then is that Rolling Hills must be denied exemption because the camp’s income allegedly equals its cost of operation, and Rolling Hills therefore is not maintained by public or private charity. See Woods School Tax Exemption Case, supra.
If we could reject the lower court’s findings and ignore the persuasive weight of evidence in the record, we might have accepted this argument in light of the Superior Court’s decision in Mount Vernon Hebrew Camps Incorporated v. Wayne County Commissioners, 201 Pa. Superior Ct. 5, 189 A. 2d 924 (1963). However, the record before us establishes convincing evidence that carries Rolling Hill’s burden of proof and additionally establishes facts easily distinguishable from those in Mount Vernon Hebrew Camps, supra.
The total cost for operating the Rolling Hills camping program far exceeds the monies received from fees assessed on the campers. All of the initial and present capital expenditures were funded by donations and charitable drives, such as the sale of Girl Scout cookies. Groundskeeping and other year-round maintenance ex *492 penses are also funded directly by the Council. In essence, the fees charged to campers cover only their food, the salaries of part-time counselors, transportation to and from the camp, and the cost of maintenance or replacement of some of the noncapital facilities and readily consumed personal property. Some of the costs not covered by the campers’ fees are the salaries of permanent counselors and supervisors, the salary of the groundskeeper, taxes, yearly upkeep, and the costs of improvements.[4] With these expenses excluded, the camp for the year of 1973 had income of $31,000 and expenses of $34,960. It was the policy of Rolling Hills never to charge any of the girls for expenses pertaining to the maintenance of the camp. The testimony further sets forth that the entire operation of the Girl Scout Council is one of a purely public and private charity supported by the United Fund, the Community Chest, individual donations, and fund raising projects.
Even ignoring the testimony as to the other capital and year-round maintenance expenses of the camp, it is clear that the camp charges even fail to cover the campers’ day-to-day cost. This alone distinguishes the present case from Mount Vernon Hebrew Camps, supra. If we take into consideration all of the camp’s expenses, we have a case of a charitable program funded to a sufficient degree by charitable contributions. In addition to Rolling Hills’ meeting the statutory requirement that the camp be “maintained by public or private charity,” it also meets the statutory proviso “[t]hat the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.” Therefore, since acceptance of fees does not of itself deprive an institution *493 of the designation of “pure public or private charity” if it qualifies in other respects, we must here hold that the fees of the campers do not so disqualify Rolling Hills. See Vanguard School Tax Exemption Case, 430 Pa. 378, 243 A. 2d 323 (1968).
Because of our prior discussion in this opinion concerning the other 1,374 acres of the camp, the Board’s next argument, that the total acreage was not “necessary to and actually used for the principal purposes of the institution,” as required by law, need not be discussed. However, we do note that clearly all of the remaining 25 acres, encompassed by this appeal, do meet the standards of the Act when applied to the facts as presented.
Finally, the Board argues that because the benefits of Rolling Hills’ program accrue only to out-of-state residents, it is therefore unjust and inequitable to place a heavy burden on the taxpayers of Wayne County, who in essence end up partially funding another state’s charity. Unfortunately for Wayne County, the reported cases in this Commonwealth clearly reject this proposition. See Infants Welfare League Camp, Inc. Tax Assessment Case, 169 Pa. Superior Ct. 81, 82 A. 2d 296 (1951). As was clearly stated by Justice Chidsey, writing in West Indies Mission Appeal, 387 Pa. 534, 550, 128 A. 2d 773, 781 (1957), “ [b] enevolence knows no geographical boundary and the Legislature of Pennsylvania has imposed none.”
While we sympathize with the residents of Wayne County, who in recent years have found more and more of their tax base being eroded by the large property purchases of charitable institutions, the law in this area is quite clear and, barring any legislative action, these residents will have to continue to carry this tax burden.[5]
*494 The record in this case clearly supports the conclusion reached by the lower court that the 25 acres of Tract No. 154-12-NT.l should be exempt from taxation, but its order must be modified insofar as it undertakes to grant exemptions to the other tracts owned by Rolling Hills.
Order relative to the striking of the assessment for Tract No. 154-12-NT.1 affirmed, but order as to the assessments for the other tracts owned by the Rolling Hills Girl Scout Council reversed without prejudice.

. Act of May 22, 1933, P. L. 853, as amended, 72 P.S. §5020—1 et seq.

. Act of May 21, 1943, P. L. 571, as amended, 72 P.S. §5453.101 et seq.

. Though the adjudication of the lower court concerned all 1,399 acres, we do not feel compelled to remand this case to the *490 lower court. The facts and conclusions of law as found by that court are equally applicable to the remaining 25 acres, and we are therefore capable of clearly ascertaining the issues at hand and the applicable facts in this appeal.

. Rolling Hills’ financial witness testified that these expenses amounted to at least $18,000 to $19,000 per year.

. Hopefully, the charitable institutions, recognizing this heavy burden and appreciating the services expended on them by their respective municipalities, might consider the highly popular method of volunteering some payments to the municipalities in lieu of taxes to help offset municipal expenses.