WEST BRANDT FOUNDATION, INC., a Louisiana non-profit corporation, d/b/a Singin' River Ranch, Petitioner,

v.

Raymond E. CARPER, Property Tax Administrator, Division of Property Taxation, and R.N. Patton, Martin E. Fisch, and F.M. Peterson, individually and as the Board of Assessment Appeals of the State of Colorado, Respondents.

No. 80SC279.

Supreme Court of Colorado,
En Banc.

Sept. 13, 1982.

Robert C. Floyd, Denver, for petitioner.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Billy Shuman, Sp. Asst. Atty. Gen., General Legal Services Section, Denver, for respondents.

Holme, Roberts & Owen, Richard R. Young, James T. Flynn, Colorado Springs, for amicus curiae U.S. Div. of Christian Camping Intern.

DUBOFSKY, Justice.

We granted certiorari to review the Court of Appeals' decision in *West Brandt Foundation v. Carper*, No. 78CA683 (July 31, 1980) (not selected for official publication) affirming the Division of Property Taxation's denial of a property tax exemption sought by the West Brandt Foundation (West Brandt) for its property in Clear Creek County, Colorado. We agree with the Court of Appeals' conclusion that West Brandt did not establish that the property is entitled to a charitable tax exemption and affirm the judgment.

In November, 1971, West Brandt purchased property in Clear Creek County, Colorado known as the Singin' River Ranch (Ranch) from The Regular Baptist Church Builders, Inc., which had a property tax exemption for the Ranch. West Brandt filed an application for exemption from Colorado property tax in December 1971. No taxes were levied on the Ranch property for the years 1971 through 1974. In April 1975, the Property Tax Administrator, acting for the Division of Property Taxation, denied West Brandt's exemption application based on its failure to furnish requested financial information. In October 1976, after a hearing, the Administrator confirmed his initial determination, finding that West Brandt had failed to establish that the Ranch was used for charitable purposes. West Brandt appealed the Administrator's decision to the Board of Assessment Appeals (Board), which held a hearing on January 7, 1977 and affirmed the denial of exemption. The Clear Creek County District Court upheld the Board's decision.

On appeal, the Court of Appeals concluded that the court action seeking review of the Board's decision should have been dismissed because Clear Creek County was an indispensable party that had not been joined as a defendant in the action. *West Brandt Foundation v. Carper*, 44 Colo.App. 137, 608 P.2d 355 (1978). In March 1980, this Court reversed, holding that the county's participation was not required, and remanded the case to the Court of Appeals for a ruling on the merits. *West Brandt Foundation v. Carper*, 199 Colo. 334, 608 P.2d 339 (1980). On remand, the Court of Appeals affirmed the denial of tax-exempt status to the Ranch.

The West Brandt Foundation is a Louisiana corporation certified as a charitable, non-profit corporation by the United States Internal Revenue Service and the Colorado Department of Revenue. Article II of its Articles of Incorporation provides that the purposes of the Foundation are "[t]o receive and administer funds for religious, educational, charitable, scientific, civic and literary purposes, deemed appropriate and worthy by the Foundation Board of Trustees, all for the public welfare, and for no other purposes...." The Foundation is connected with the West Brothers chain of department stores which has its headquarters in DeRidder, Louisiana and which has stores in several Southern states, primarily Louisiana and Texas.

The Singin' River Ranch is a group guest facility consisting of approximately 260 acres and a number of buildings, including two large dormitories and a dining hall, as well as a large recreational field and facilities for ice skating and sledding during the winter. The Ranch provides no instructors or curriculum of its own; groups and organizations using the Ranch supply their own materials, instructors and curricula.

Ranch registration records for the years 1973 through 1976 show over 200 parties registered for a stay at the Ranch. A majority of these parties were affiliated with a church, religious organization or elementary or secondary school. Testimony at the hearing before the Board indicated that Ranch employees visit schools and churches to solicit groups to stay at the Ranch and the Ranch is listed in directories as providing facilities available to church groups. During the summer, the Ranch is used for a summer camp program known as Christian Life Adventure Camp. In the summer of 1974, the first summer for the program, 74 campers participated. In 1975, the program included 196 youngsters, and in 1976, attendance was 254.

Mr. Glen West, president of the West Brandt Foundation, testified at the Board hearing as to the eventual goals sought to be fulfilled through use of the Ranch:

[T]he overall objective of the foundation . . . is to get more people to live the Christian life. We felt that if we would come to Denver and set up a facility here in Denver and make it available to people, to schools, and things of that nature, and also to churches, we would be able to furnish something that would help—not only help the churches and schools in this area, but, eventually, we would be able to do some of our own programs out there and they would have some of our own people in working out various programs.

.     .     .     .     .

What we want to do is eventually work with enough people at this ranch to use it as an experimental area to develop programs and that kind of thing, so that we can develop what we call a group of life skilled courses.

.     .     .     .     .

So, we entered . . . an interdenominational program to get people interested or involved in a christian-type ministry. So, eventually, that's where we want to go. . . . This might not be in my lifetime when we do this. This is the vision I have for what we want to do.

A number of the groups using the Ranch accommodations have no apparent religious, educational or charitable affiliation. The registration records disclose that the Ranch facilities were used on various occasions for a retirement dinner, a wedding, a rehearsal dinner, meetings set up by the Bureau of Land Management, family reunions, and meetings of managers and employees of the West Brothers stores. Among the groups which accounted for the largest receipts for lodging at the Ranch were student ski groups.

Guests at the Ranch are charged uniform daily rates for room and board. As of 1976, these rates were $11.00 per day for adults, with slightly reduced uniform rates for students and children. An additional fee was charged for sheets, towels and soap. These rates were charged to all guests without exception. No groups were charged special rates by virtue of their affiliation, nor were individuals within groups given a discount because of inability to pay. West Brandt alleged, but did not produce evidence, that these rates were below the market price for comparable lodgings in the vicinity.

West Brandt also alleged that the Ranch operates at a loss of approximately $150,000 a year and that the Foundation makes up the deficit with funds received through contributions. However, accounting records for the years 1974 through 1976 submitted to the Board of Assessment Appeals did not clearly establish this. In these records, income from guest payments was sometimes attributed to Ranch income and sometimes to the income of the Foundation. In several instances, operating expenditures for particular groups were listed as Ranch expenses while receipts from lodging pay-

ments were attributed to Foundation income. Most notably, payments for participation in the Christian Life Adventure Camps were made to the Foundation, while all expenses for the camp were listed under Ranch costs. In light of this confusion, the extent to which the Ranch is subsidized by the Foundation is not clear from the evidence in the record.

A significant proportion of guests at the Ranch come from outside Colorado. In 1973, non-Colorado user days comprised 18% of the total number of user days. In 1974, they accounted for 15% of user days; in 1975, 39%; and in 1976, 37%. The Christian Life Adventure Camps are advertised in West Brothers stores, none of which are located in Colorado, and the camp program is organized through the Foundation's home office in Louisiana. Of the 524 individuals attending the Christian Life Adventure Camps in the years 1974 through 1976, only two were Colorado residents.

The basis for the property tax exemption West Brandt seeks is Article X, Section 5 of the Colorado Constitution, which provides:

Property, real and personal, that is used solely and exclusively for religious worship, for schools or for strictly charitable purposes ... shall be exempt from taxation, unless otherwise provided by general law.

■ Section 39–3–101(1)(g)(I)(A), C.R.S. 1973, also provides for the charitable tax exemption as follows:

The following shall be exempt from general taxation under the provisions of articles 1 to 13 of this title:

.        .        .        .        .

(g)(I) Property, real and personal, that is owned and used solely and exclusively for strictly charitable purposes and not for private gain or corporate profit if:

(A) Such property is nonresidential....

The power to construe the constitutional words "charitable purposes" rests with the courts of this state. *United Presbyterian Ass'n v. Board of County Commissioners,* 167 Colo. 485, 448 P.2d 967 (1968). *See also*

section 39–3–101(1)(g)(III), which provides: "It is recognized that only the judiciary can make a final decision as to whether or not a given property is or is not used for charitable purposes within the meaning of the state constitution...."

The definition of charity most frequently quoted in our prior opinions is from *Jackson v. Phillips,* 96 Mass. (14 Allen) 539, 556 (1867):

A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

*United Presbyterian Ass'n, supra; Bishop of Cathedral of St. John v. Treasurer,* 37 Colo. 378, 86 P. 1021 (1906). While, as with all exemptions from taxation, the charitable exemption will be strictly construed to include only those activities contemplated by the constitution, *United Presbyterian Ass'n, supra,* this Court has been receptive to exemptions supporting charitable and religious endeavors. *General Conference of the Church of God v. Carper,* 192 Colo. 178, 557 P.2d 832 (1976); *Bishop of Cathedral of St. John, supra. See* Ginsberg, *The Real Property Tax Exemption of Nonprofit Organizations: A Perspective,* 53 Temple L.Q. 291 (1980).

■ Eligibility for exemption is determined by examining the use to which the property is put, not the character of the owner. *United Presbyterian Ass'n, supra.* Thus, the fact that the West Brandt Foundation is exempt from state and federal income taxation as a non-profit organization is not dispositive of its claim for exemption from *ad valorem* taxation, which must be considered under independent criteria. *American Water Works Ass'n v. Board of Assessment,* 38 Colo.App. 341, 563 P.2d 359 (1976). However, the character of

the owner may often illuminate the purposes for which the property is used and need not be excluded from consideration. *Kemp v. Pillar of Fire*, 94 Colo. 41, 27 P.2d 1036 (1933). In examining how the property is used, we have utilized the principle that while charitable purpose as an end will be strictly construed, as long as the end is clearly established as charitable, "the means used to achieve that end will be liberally construed as a use for a charitable purpose." *United Presbyterian Ass'n, supra,* 448 P.2d at 973.

■ The fact that fees are charged for use of facilities is not fatal to a claim for exemption. In *Bishop of Cathedral of St. John, supra,* we stated:

> We do not think that the right to exemption is affected by the fact that few pay, or all pay, so [long as] the amount received does not exceed the expenses, and the institution is not maintained for gain or profit, and the sums paid or contributed are devoted to the purpose for which the charity was founded.

37 Colo. at 389, 86 P. 1021. In later decisions, we have indicated that payment of fees does not foreclose charitable exemption, even if the facility involved does not operate at a loss, as long as any surplus is devoted to charitable purposes. *United Presbyterian Ass'n, supra; see American Water Works Ass'n, supra.* The Colorado decisions on payment of fees are consistent with the approach taken by a majority of states interpreting similar state constitutional provisions. *See, e.g., Matanuska-Susitna Borough v. King's Lake Camp,* 439 P.2d 441 (Alaska 1968); *Youth Tennis Foundation v. Tax Commission,* 554 P.2d 220 (Utah 1976); Annot. 37 A.L.R.3d 1191; 71 *Am.Jur.2d State and Local Taxation* § 373 at 679 (1973).

However, where the fees charged are characterized as remunerative, they may defeat an exemption. In *United Presbyterian Ass'n, supra,* the issue was whether a home for physically independent elderly persons which required payment of a substantial occupancy fee and monthly rental varying according to the desirability of each unit was entitled to a charitable tax exemption. While stressing that charging rentals did not *ipso facto* negate a charitable purpose, we noted that several characteristics of the fees charged evidenced a lack of charitable use or intent. The monthly rentals varied according to the kind of accommodation provided and were competitive with rents charged in commercial apartment buildings. The rental schedules were fixed in an amount sufficient to pay interest and amortize principal on mortgage debt and to maintain the property, and rents were subject to increases related to rising costs. Further, no provisions were made to assist financially those who became ill or impecunious while tenants of the facility, and only a miniscule amount compared to total rental income had been donated by the home as rental subsidies to needy tenants. From these factors, we concluded that the relationship of the home to its tenants was imbued with an atmosphere of *quid pro quo* which negated the spontaneous and generous giving of talents and goods to those in need which characterizes true charity. Stating that "where material reciprocity between alleged recipients and their alleged donor exists—then charity does not," we denied the home tax-exempt status. 448 P.2d at 976.

■ Another factor in determining the grant of a tax exemption is whether the activity lessens the burdens of government. One justification for exempting charitable enterprises from taxation is that they perform functions which tax-supported governmental entities would otherwise be required to perform, *United Presbyterian Ass'n, supra; Young Life Campaign v. Board of County Commissioners,* 134 Colo. 15, 300 P.2d 535 (1956); *Kemp v. Pillar of Fire, supra;* Note, *Exemption of Educational, Philanthropic and Religious Institutions from State Real Property Taxes,* 64 Harv.L. Rev. 288 (1950); *Ginsberg, supra.* Thus, it is appropriate to determine whether the use of property is of a kind which relieves government of a task it would otherwise have to perform, and whether the benefit conferred by that use inures primarily to

the people of Colorado upon whom the burden of any additional taxation resulting from exemptions will fall. *See United Presbyterian Ass'n, supra; Young Life Campaign v. Board of County Commissioners, supra; American Water Works Association, supra.*

One basis upon which.the Court of Appeals in this case denied an exemption to the Ranch property was that, although the facilities were used by Colorado organizations, the property was not operated primarily for the benefit of Coloradans, nor was the Ranch performing what would otherwise be a governmental function. It is argued to this Court that West Brandt was seeking exemption not only on charitable grounds, but also on the basis that the Ranch was used for religious and educational purposes.

This Court noted in *General Conference of the Church of God v. Carper, supra,* that the Colorado benefit test is inappropriate when treatment of "bona fide religious groups" is at issue because

> a religious group does not have as a fundamental purpose the providing of services which the state would otherwise have to provide since the state is constitutionally prohibited from such religious involvement.

557 P.2d at 834. While the record is unclear,[1] it appears that the thrust of West Brandt's claim is under the charitable use exemption. The Ranch is clearly not a place of religious worship, nor is it a school, and West Brandt has never so claimed. The only category under which the Ranch has a colorable claim to exemption is as a charitable use.

■ *General Conference of the Church of God v. Carper, supra,* applies explicitly only to religious exemptions. However, even where property is claimed exempt for charitable use, there is a question whether constitutional concerns would prevent application of the Colorado benefit test when the use primarily involves religious activities. *See Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). We need not consider this issue in its most difficult form because the record does not support the contention that the Ranch is used primarily for religious purposes. It is true that a large number of church groups are users of the facility and that, according to West Brandt's president, an aim meant to be fulfilled by the Ranch "is to get more people to live the Christian life." Nevertheless, the Ranch also accommodates large numbers of groups who have no particular religious program and affirmatively maintains that it is open to groups of any denomination, including non-Christian parties. In light of these facts, we conclude that the Court of Appeals did not err in applying the Colorado benefit test as one factor to be considered in determining the Ranch's eligibility for exemption.

■ Turning to the central issue, we conclude that West Brandt did not adduce sufficient evidence of charitable use to meet the standards imposed by case law. First, the fact that the Ranch charges uniform rates to all groups, whether or not they have an educational, religious or philanthropic orientation, tends to negate a charitable purpose. For example, fees charged individuals meeting under the auspices of the Muscular Dystrophy Association were identical to those charged individuals attending a West Brothers management seminar. This does not indicate a preference for charitable users. Further, West Brandt made no showing that the normal fees were ever reduced or waived because of an individual's inability to pay. "An organization

---

1. While West Brandt's application for exemption is not a part of the record before us, the Board indicated that West Brandt claimed the exemption on the basis that the property was "owned and used solely and exclusively for strictly charitable purposes." However, at the hearing before the Board, West Brandt also argued that educational and religious purposes and activities carried on at the Ranch entitled it to exemption under those categories as well. The Board concluded that the property would not be eligible for exemption for either religious or educational use, even if West Brandt had sought exemption on these grounds. The district court order stated that West Brandt "apparently was attempting to claim an exemption on the basis of an admixture of religious, educational and charitable uses."

which does not extend some of its benefits to individuals financially unable to make the required payments reflects a commercial activity rather than a charitable one." *Federation Pharmacy Services, Inc. v. Commissioner,* 625 F.2d 804, 807 (8th Cir. 1980). *See Stanbro v. Baptist Home Ass'n,* 172 Colo. 572, 475 P.2d 23 (1970); *United Presbyterian Ass'n, supra.* Moreover, West Brandt failed to make any showing beyond the bare allegation that the Ranch's rates were below the market level for comparable accommodations. This failure of proof was compounded by the absence of clear evidence that income from guest fees was insufficient to cover operating costs. The burden is on the taxpayer to present evidence supporting exemption. *United Presbyterian Ass'n, supra; Kansas City District Advisory Board v. Board of County Commissioners,* 5 Kan.App.2d 538, 620 P.2d 344 (1980).

Another factor tending to negate charitable purpose is that the Ranch is open to any group willing to pay the fees charged, and parties registered at the camp include several which have no charitable orientation. Admittedly, the majority of organizations using the Ranch have a church or educational affiliation. If use by other groups were merely incidental to the primary use to which the facility was being put, this would not by itself defeat exemption. 71 *Am.Jur.2d, supra* § 369 at 675. *See Kemp v. Pillar of Fire, supra; Horton v. Colorado Springs Masonic Building Society,* 64 Colo. 529, 173 P. 61 (1918). However, the non-charitable uses are not incidental here. The ski groups using the Ranch during the winter months account for a significant proportion of the Ranch's income and are among the groups who account for the largest sums of money paid to the camp for accommodations. Again, it is relevant to this issue that the Ranch provides no programs of its own, but merely provides lodgings for any group that wishes to make use of its facilities.

The fact that a significant proportion of Ranch guests are from out of state does not help support West Brandt's case for exemption. It is especially significant that the Christian Life Adventure Camps are all but exclusively comprised of youngsters from out of state, and that the large ski groups which use the facility in winter are likewise either affiliated with non-Colorado schools or are organized through the Foundation's headquarters in Louisiana. While not dispositive, it is nevertheless noteworthy that the uses made of the camp during the most desirable times of year involve non-residents and do not benefit the people of Colorado. *See Young Life Campaign, supra. Cf. American Water Works Ass'n, supra.*

In sum, the primary purpose of the Ranch at present is to provide inexpensive lodgings to a variety of groups to use for whatever purpose they choose. While the Ranch apparently makes an effort to attract groups from churches and schools, it does not limit access based on any criteria of worthiness, nor does it provide lower rates for these groups than for any others. West Brandt's president testified that the Foundation hoped to utilize the Ranch as a base for more extensive charitable and religiously oriented activities, but there was no evidence that these plans had been implemented at the time this litigation began. The provision of low-cost meeting facilities to worthy groups is certainly a commendable activity, and we do not mean to discourage it; however, a recreational facility of this kind must be examined closely in determining eligibility for exemption. A large number of such facilities exist in Colorado, and care must be taken to extend the advantage of tax exemption only to those institutions whose purposes conform to the constitutional requirements.

By our decision here we do not mean categorically to exclude from exemption camping and retreat facilities of this kind. We are aware of decisions from other jurisdictions granting exemptions under similar constitutional provisions to such facilities. *See, e.g., Matanuska-Susitana Borough v. King's Lake, supra; Jewish Community Centers Ass'n v. State Tax Commission,* 520 S.W.2d 23 (Mo.1975); *Flathead Lake Methodist Camp v. Webb,* Mont., 399 P.2d 90 (1965); *Gospel Volunteers v. Speculator,* 33

A.D.2d 407, 308 N.Y.S.2d 785 (1970); *Wayne County Board of Assessment v. Rolling Hills Girl Scout Council,* 19 Pa. Cmwlth. 484, 353 A.2d 498 (1975). However, other decisions have denied exemptions based on the same factors in evidence here. *E.g., Camping and Education Foundation v. State,* 282 Minn. 245, 164 N.W.2d 369 (1969); *Kansas City District Advisory Board v. Board of County Commissioners, supra.* Each case must be decided on the specific facts presented. Here, the evidence presented by West Brandt does not support its claim for exemption.

Judgment affirmed.