### CATHOLIC HEALTH INITIATIVES COLORADO, d/b/a Villa Pueblo Towers, Plaintiff–Appellant,

v.

### CITY OF PUEBLO, Colorado, Department of Finance, and Lara Barett as Director, Defendants–Appellees.

No. 05CA2432.

Colorado Court of Appeals, Div. I.

Sept. 6, 2007.

Certiorari Granted May 27, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S.2006.

Kutak Rock, LLP, Mark L. Sabey, Denver, Colorado, for Plaintiff–Appellant.

Law Offices of Thomas E. Jagger, Robert P. Jagger, John G. Scorgie, Pueblo, Colorado, for Defendants–Appellees.

Opinion by Judge MÁRQUEZ.

Catholic Health Initiatives Colorado appeals the trial court's judgment denying it a City of Pueblo sales and use tax exemption for its retirement community because it was not engaged in a religious activity. We reverse.

According to the stipulated facts, Catholic Health owns and operates Villa Pueblo. Villa Pueblo is a continuing care retirement community in Pueblo providing different levels of care for elderly residents, including general elder support, assisted living, and skilled nursing care.

Catholic Health applied to the city for a sales and use tax exemption as a charitable and religious organization, but the application was denied. When the city audited the operations of Villa Pueblo and issued a notice of assessment for sales and use tax, Catholic Health protested the assessment. The city issued a final determination in the amount of

$22,587.68, but Catholic Health claimed to be entirely exempt from the sales and use tax.

On appeal, the Executive Director of the Colorado Department of Revenue found that the exemption for religious or charitable organizations did not apply and the city was entitled to its assessment.

Catholic Health appealed to the trial court pursuant to § 29–2–106.1(7), C.R.S.2006, but only on the claim that the operation of Villa Pueblo is a religious activity of a religious organization.

Catholic Health and the city waived the right to a trial and submitted the case to the trial court on stipulated facts. In part, those facts included the following as to Catholic Health's status as a tax exempt religious organization: Catholic Health is a religious organization affiliated with the Roman Catholic Church; Catholic Health operated its senior care facilities, including Villa Pueblo, at a net loss for the period July 1, 1997 through May 31, 2004; to Catholic Health, providing housing and care for the elderly is a religious activity motivated by religious belief; Catholic Health's facilities are managed and operated by Centura Health Corporation, a Colorado not-for-profit corporation; Catholic Health is a tax exempt not-for-profit religious organization under § 501(c)(3) of the Internal Revenue Code; Catholic Health and Villa Pueblo are listed in the Official Catholic Directory; the Internal Revenue Service determined that all institutions listed in the Official Catholic Directory were exempt from federal income tax under § 501(c)(3); Catholic Health's bylaws require it to operate in accordance with the Ethical and Religious Directives for Catholic Health Care Services approved by the Committee on Doctrine of the National Conference of Catholic Bishops; Catholic Health provides services and advocates for the elderly in accordance with its mission, and providing care and housing for the elderly is part of the religious mission of the Catholic Church; Catholic Health instructs new employees in orientation about the meaning of its religious mission, and all employees are required to support that religious mission and follow religious directives of the Catholic Church related to their jobs; and Catholic Health provides extensive leadership training for its managers regarding the religious mission and ministry.

The parties also stipulated to, among other things, the following facts about the operation of Villa Pueblo: Villa Pueblo is operated by Catholic Health Initiatives Colorado as part of the health care apostolate of the Catholic Church; Villa Pueblo is a continuing care retirement community with the average age of all residents being approximately eighty-seven years old; monthly fees for independent units range from $1130 to $2347, and assisted living and nursing care facility rates are higher; from mid–1997 through mid–2000, approximately fifty percent of the residents of Villa Pueblo paid market rates for their accommodations, while the remaining fifty percent were on life care contracts; Villa Pueblo is losing money on its life care contract program; Villa Pueblo admits residents who are unable to pay the normal and customary charges; Villa Pueblo holds itself out to the general public as a religious organization; Villa Pueblo pays for an on-site chaplain who is available twenty-four hours a day, seven days a week; the chaplain interviews and completes a spiritual assessment for all residents admitted into the assisted living and skilled nursing units to create an individual spiritual care plan; Villa Pueblo facilities include a chapel for use by residents and staff for worship and meditation; the chaplain conducts Sunday vesper services for residents and staff; mass is conducted every Sunday, and a midweek Episcopal service is also held; Villa Pueblo arranges special, additional on-site worship services such as a Blessing of the Hands service where nurses and other associates are invited to have their hands blessed with oil; and employees of Villa Pueblo are required to respect and uphold the religious mission of Villa Pueblo and adhere to Catholic Church directives.

Because the parties stipulated that Catholic Health is a religious organization and is certified by the IRS as a not-for-profit organization under § 501(c)(3) of the Internal Revenue Code, Catholic Health met the charitable organization definition under Pueblo's municipal code. Therefore, the only issue for

the trial court was whether the operation of Villa Pueblo is a religious activity or function.

After reviewing the stipulated facts and briefs and hearing oral argument, the trial court concluded that operation of the retirement community was not a religious activity. The trial court found:

> I accept ... the stipulated facts as they have been set out.... I ... appreciate that it is expensive to operate a facility such as Villa Pueblo and that the family members of the folks who live there are very appreciative of the obviously superior care they get at that facility, but my question is, is this a religious activity that would trigger constitutional safeguards? Instead I find that it is a community of like-minded citizens who have chosen to conclude their lives in a community of similarly situated souls. The activity of moving into Villa Pueblo, whether the assisted living portion, the independent living portion, the condominiums, [or] the apartments, is not a religious activity. [sic] It is a charitable deed on the part of the Catholic church as all religions are admonished to do by statements in the new testament.
>
> In order for ... me to find that the First Amendment Rights of the Catholic church would prevent the City of Pueblo from collecting [its] sales and use tax, I would have to find that religion must prevail [sic] the activities of the institution and I cannot. Certainly it is true that people there are urged to pray with, communicate with, and encourage religious activities; however, religion does not prevail [sic] the organization or institution so as to prevent people who disagree from living in the residence.

Thus, the court found that the First Amendment rights of the Catholic Church did not prevent collection of the sales and use tax. The court further ruled that "[t]he religious exemptions will apply to regularly ... related religious functions, and other than that, for all secular functions, like refrigerators and stoves, Villa Pueblo must pay sales and use tax to the City of Pueblo when applicable."

## I. Standard of Review

An appeal to the district court pursuant to § 29–2–106.1(7) is a trial de novo. Section 39–21–105, C.R.S.2006. A decision of the district court is reviewable by this court "as is otherwise provided by law." Section 39–21–105(7), C.R.S.2006.

[1, 2] We review the construction of a city ordinance de novo. When construing an ordinance, we give the ordinance its plain and ordinary meaning whenever possible. *See Bumbal v. Smith,* 165 P.3d 844 (Colo. App.2007).

Our primary task when interpreting an ordinance is to determine and give effect to the intent of the body enacting it. We are not bound by a trial court's interpretation of a city ordinance. *Int'l Paper Co. v. Cohen,* 126 P.3d 222, 226 (Colo.App.2005).

Here, review is based on stipulated facts. When a judgment is entered on stipulated facts and documentary evidence, we are obligated to make an independent judgment on the merits. *Bolser v. Bd. of Comm'rs,* 100 P.3d 51, 53 (Colo.App.2004).

## II. Religious Activity

Catholic Health contends that its operation of Villa Pueblo is a religious activity and that the trial court did not apply the proper test. Catholic Health argues that because it is motivated by religious beliefs, its activities are religious and that religious activities include more than formal worship services. It also asserts that government officials cannot determine what constitutes a valid religious practice or belief. The city does not question Catholic Health's religious motives. Rather, it asserts that most of the operations of Villa Pueblo are substantially identical to the operations of many other retirement, assisted living, and nursing home facilities which are admittedly subject to the municipal sales and use tax. It acknowledges that Villa Pueblo is entitled to exemption on purchases and sales directly related to facets of its operation that are religious in nature but asserts that all such partial exemptions were granted.

Contrary to the trial court's ruling and the city's argument, we conclude that the entire

operation of Villa Pueblo is a religious activity. To address this issue, we first review Pueblo's municipal code, and we note as a threshold matter that Catholic Health does not challenge the constitutionality of Pueblo's sales and use tax. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

### A.   Municipal Code

The following classes of tangible personal property are among those exempt from sales taxation under Pueblo's municipal code:

> sales to charitable organizations as defined in Section 14–4–21 ... in the conduct of their regular religious or charitable functions and activities, which organizations, at the time of sale or purchase, present satisfactory evidence of being issued a current tax exempt license for the City to the vendor or retailer.

Pueblo Mun.Code § 14–4–76(8).

In addition, the use tax does not apply to the storage, use, or consumption of any tangible personal property by "charitable organizations as defined in Section 14–4–21 ... in the conduct of their regular religious or charitable functions." Pueblo Mun.Code § 14–4–77(5).

Under § 14–4–21, "charitable organization" means any entity which:

a.   Has been certified as a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code; and

b.   Is a religious or charitable organization.

As used in this definition, a *charitable organization* is an organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the physical, mental or spiritual needs of persons, and which thereby lessens the burdens of government.

Pueblo Mun.Code § 14–4–21(5).

Thus, for purposes of Pueblo's municipal sales and use tax, a religious organization is a charitable organization. And to be exempt as a sale to or use by a religious organization, the sale or use must also be in the conduct of the religious organization's regular religious functions and activities.

However, the term "religious functions and activities" is not defined in the code. The term "religious" is used only in the three sections of the city's sales and use tax code noted above: the section defining "charitable organization," § 14–4–21(5); the items exempt section, § 14–4–76(8); and the items exempt from use tax section, § 14–4–77(5). The city's sales and use tax code does not give a religious organization a tax exemption apart from these three sections.

### B.   Determining Religious Activity

■ "[U]nlike most tax exemptions, tax exemptions for religious organizations are construed more broadly so as to accommodate First Amendment concerns." *Prince–Walker v. Indus. Claim Appeals Office,* 870 P.2d 588, 591 (Colo.App.1993), *aff'd sub nom. Samaritan Inst. v. Prince–Walker,* 883 P.2d 3 (Colo.1994); *see also Gen. Conference of Church of God–7th Day v. Carper,* 192 Colo. 178, 182, 557 P.2d 832, 834 (1976); *Kemp v. Pillar of Fire,* 94 Colo. 41, 45, 27 P.2d 1036, 1037 (1933).

In the absence of a definition of religious activity in the city's code, we look to tests applied in other tax cases. *See Elec. Power Research Inst., Inc. v. City & County of Denver,* 737 P.2d 822 (Colo.1987) (applying rule apart from ordinance to define "charitable" in absence of a definition in Denver's sales and use tax ordinance).

Before the trial court, Catholic Health limited its claim to a religious, rather than a charitable, exemption. The trial court concluded that "the activity of moving into Villa Pueblo" is not "a religious activity," but rather a "charitable deed," and it stated that to apply the exemption, it would "have to find that religion must prevail the activities of the institution." Because the court cited no authority, the source and meaning of this standard are unclear. Even assuming that the court meant "pervade" rather than "prevail," we do not find it appropriate. *See Samaritan Inst. v. Prince–Walker, supra,* 883 P.2d

at 8 n. 4 (use of religion "pervades" test is misleading because it implies that the motivation of an organization is determinative).

In determining whether the operation of Villa Pueblo is a religious activity, we must be wary of excessive government entanglement. *See Lemon v. Kurtzman, supra,* 403 U.S. at 613, 91 S.Ct. at 2111. This does not mean that the government cannot be involved at all. "The Supreme Court has consistently recognized that a certain amount of church-state entanglement will exist." *Espinosa v. Rusk,* 634 F.2d 477, 483 (10th Cir. 1980) (Barrett, J., dissenting) (citing *Sch. Dist. v. Schempp,* 374 U.S. 203, 212, 83 S.Ct. 1560, 1565, 10 L.Ed.2d 844 (1963); *Engel v. Vitale,* 370 U.S. 421, 434, 82 S.Ct. 1261, 1268, 8 L.Ed.2d 601 (1962)) (considering the validity of a solicitation ordinance), *aff'd,* 456 U.S. 951, 102 S.Ct. 2025, 72 L.Ed.2d 477 (1982).

Indeed, in this case Catholic Health recognizes that not all activities of a religious organization are religious, that operating an elder care facility is not always a religious activity, and that the nonreligious reasons for operating such facilities may range from profit motive to secular social considerations. Nevertheless, it argues that where, as here, operating an elder care facility is motivated by sincerely held religious beliefs, that operation is unquestionably a religious activity. It also notes that the city does not attack the sincerity of the religious beliefs of the Catholic Church and Catholic Health that motivate the operation of Villa Pueblo. To the contrary, Catholic Health's religious motivations are stipulated.

We agree that not every activity of a religious organization is a religious activity. *See Feldstein v. Christian Science Monitor,* 555 F.Supp. 974, 978 (D.Mass.1983) ("not every endeavor that is affiliated, however tenuously, with a recognized religious body may qualify as a religious activity of that body" and thus qualify for constitutional protection). We do not agree, however, that motivation alone controls, although it should be considered along with some analysis of the organization's activities.

Catholic Health also argues that government officials cannot determine what constitutes a valid religious practice or belief. According to Catholic Health, an exemption that permits government officials to assess the activities of a religious organization and decide which of those activities are religious and which are nonreligious raises serious entanglement and free exercise concerns under the religion clauses of the federal and state constitutions. We conclude that a certain amount of inquiry into a religious organization's activities is appropriate.

In *Maurer v. Young Life,* 779 P.2d 1317, 1330–31 (Colo.1989), the supreme court addressed whether a religious organization was exempt from property taxation under the state's property tax provisions: "In determining whether property is entitled to exemption from taxes '[e]ach case must be decided on the specific facts presented.'... [T]he Board must examine the use to which the property is put, not the character of the owner." *See W. Brandt Found., Inc. v. Carper,* 652 P.2d 564, 567 (Colo.1982); *Pilgrim Rest Baptist Church, Inc. v. Prop. Tax Adm'r,* 971 P.2d 270, 272 (Colo.App.1998) (no particular frequency or quantity of religious use is required to receive statutory property tax exemption); *Cmty. Synagogue v. Bates,* 1 N.Y.2d 445, 154 N.Y.S.2d 15, 136 N.E.2d 488, 493 (1956)(denial of application for religious uses in residential area; "each case ultimately rests upon its own facts").

However, the court in *Maurer* noted that "the character of the owner may often illuminate the purposes for which the property is used and need not be excluded from consideration.'" *Maurer v. Young Life, supra,* 779 P.2d at 1331 (quoting *W. Brandt Found., Inc. v. Carper, supra,* 652 P.2d at 567); *see Kemp v. Pillar of Fire, supra,* 94 Colo. at 42, 27 P.2d at 1036.

The court in *Maurer* also held that allowing for a broad interpretation of tax exemptions would be "consistent with our precedents providing a policy of receptiveness towards 'exemptions implementing the constitutional policy of support for charitable and religious endeavors,'" as well as serving "the important purpose of avoiding any detailed governmental inquiry into or resultant endorsement of religion that would be prohibited by the establishment

clause of the first amendment to the United States Constitution." *Maurer v. Young Life, supra,* 779 P.2d at 1332–33 & n. 21 (quoting *Gen. Conference of Church of God–7th Day v. Carper, supra,* 192 Colo. at 182, 557 P.2d at 834); *see W. Brandt Found., Inc. v. Carper, supra,* 652 P.2d at 567 (supreme court has been receptive to exemptions supporting charitable and religious endeavors); *Gen. Conference of Church of God–7th Day v. Carper, supra,* 192 Colo. at 180, 557 P.2d at 834 (supreme court has always been receptive to exemptions implementing the constitutional policy of support for charitable and religious endeavors); *Kemp v. Pillar of Fire, supra,* 94 Colo. at 44–45, 27 P.2d at 1037.

In determining whether the activities of an organization qualify for an exemption from payment of unemployment compensation, the supreme court recognized that "[t] he activities of an organization, and not the motivation behind those activities, determine whether an exemption is warranted." *Samaritan Inst. v. Prince–Walker, supra,* 883 P.2d at 7. This analysis accords with the court's statement in *Maurer v. Young Life, supra,* that the tax board must examine the use to which property is put, not the character of the owner.

■ In addition, if the property of a religious organization is otherwise exempt, property that is necessarily incidental to the exempted primary uses is also entitled to exemption. In *Maurer v. Young Life, supra,* 779 P.2d at 1331, the property tax administrator argued that Young Life's properties were put to uses typical of mountain camps and resorts and that the evidence was insufficient to show that the properties were primarily used for religious worship or reflection. Although there were no structures on certain portions of the properties designated for religious worship or reflection, other evidence indicated that those properties were necessarily incidental to Young Life's use of its main properties for religious worship or reflection. Thus, because Young Life's use of outdoor activities was an effective and important component of its program of religious worship and reflection, "property necessary to support" these activities and

Young Life's religious use was also entitled to exemption. *See Maurer v. Young Life, supra,* 779 P.2d at 1332 n. 18; *Gen. Conference of Church of God–7th Day v. Carper, supra,* 192 Colo. at 182, 557 P.2d at 834 (supreme court has extended exemptions to property that was incidental to furtherance of the objectives of the exempt group).

Thus, while excessive government entanglement must be avoided in determining whether a religious organization is entitled to a tax exemption, the government may consider motivation but must examine other factors.

At the same time, we reject the city's apparent contention that the existence of other secular nursing homes indicates that this is not a religious activity. "[A] religious activity of a religious organization does not lose that special status merely because it holds some interest for persons not members of the faith, or occupies a position of respect in the secular world at large." *Feldstein v. Christian Science Monitor, supra,* 555 F.Supp. at 978.

■ The fact that fees are charged for use of facilities is not fatal to a claim for property tax exemption. *W. Brandt Found. v. Carper, supra,* 652 P.2d at 567. This is true so long as "the amount received does not exceed the expenses, and the institution is not maintained for gain or profit, and the sums paid or contributed are devoted to the purpose for which the charity was founded." *Bishop v. Treasurer,* 37 Colo. 378, 389, 86 P. 1021, 1025 (1906), *cited in Denver Turnverein v. McGlone,* 91 Colo. 473, 475, 15 P.2d 709, 710 (1932), *and W. Brandt Found. v. Carper, supra,* 652 P.2d at 568.

A court may also consider whether the activity is an integral part of the organization's ministry or a "mere fund raiser to support other charitable or religious activities that everyone is familiar with." *Kollasch v. Adamany,* 104 Wis.2d 552, 313 N.W.2d 47, 56 (1981) (holding that a religious order that served and charged for meals was exempt from sales tax because the preparing, serving, and sharing of meals was a religious act for the order).

Although not cited by the parties, we note that a few courts in other jurisdictions have addressed tax exemptions for homes for the elderly. However, in each case the evidence reflected the facilities were business operations, and unlike here, none of them were operating at a loss. For these reasons, these cases do not change our result. *See Fairview Haven v. Dep't of Revenue,* 153 Ill. App.3d 763, 106 Ill.Dec. 634, 506 N.E.2d 341 (1987); *Evangelical Lutheran Good Samaritan Soc. v. Buffalo County Bd. of Equalization,* 243 Neb. 351, 500 N.W.2d 520 (1993); *Christian Retirement Homes, Inc. v. Bd. of Equalization,* 186 Neb. 11, 180 N.W.2d 136 (1970); *Yakima First Baptist Homes, Inc. v. Gray,* 82 Wash.2d 295, 510 P.2d 243 (1973).

### C. Application

■ We do not purport to define conclusively the term "religious activity." However, we conclude that the principles in *Maurer* and the other Colorado cases discussed above, although not sales and use tax cases involving city ordinances, may be appropriately applied in the sales and use tax context as well.

Applying these principles, we conclude that Villa Pueblo's operation is a religious activity or function. The Pueblo code does not limit the term "in the conduct of their regular religious ... functions and activities," by use of terms like religious "worship," "reflection," or "proselytizing."

Because the parties have stipulated to the specific facts of this case, any concern about weighing evidence, resolving conflicts, or determining credibility is absent, and any concern about excessive government entanglement is minimal. The parties stipulated that Catholic Health is a religious organization affiliated with the Catholic Church; that it operated at a loss from July 1, 1997 through May 31, 2004; that its activities are religiously motivated; that Catholic Health provides services consistent with its mission; that it makes a chaplain available seven days a week who provides a spiritual assessment for residents in the assisted living and skilled nursing units; and that Villa Pueblo has a chapel available for worship services and provides regular religious services.

The use to which the property is put is consistent with Catholic Health's sincerely held religious belief. The parties stipulated that Catholic Health provides services and advocates for the elderly in accordance with its mission; that the use of the property for religious worship and reflection is integrated into Villa Pueblo's daily activities; that its managers are trained regarding the religious mission and ministry; that its employees are instructed and required to support that mission and follow religious directives of the Catholic Church; and that Villa Pueblo holds itself out as a religious organization.

At issue here is whether all or only part of the items used in Villa Pueblo's operations are entitled to the exemption from sales and use tax. We note that the city acknowledges that Villa Pueblo is entitled to exemption on certain facets of its operations. In doing so, it essentially concedes that at least a portion of Villa Pueblo's operation has a religious component.

In its briefs before the trial court and on appeal, the city stated that to the extent that certain facets of the operation of Villa Pueblo are in fact religious in nature, Villa Pueblo is entitled to exemption from sales or use taxation on purchases or expenditures directly related to those religious facets of operation, such as the operation of the chapel on the top floor of the residential facility. It further stated that so far as the city could determine, all such partial exemptions were granted.

In view of a policy of receptiveness toward exemptions for religious endeavors, we conclude the sales and use of all tangible personal property at issue here are within the "conduct of [Villa Pueblo's] regular religious functions" as the term is used in Pueblo's municipal code. Because we see no argument or indication in the record that the non-exempted items were not used in Catholic Health's operation of Villa Pueblo, we conclude that the property is used for purposes necessarily incidental to the exempted primary use. *See Maurer v. Young Life, supra.* Accordingly, under the stipulated facts regarding Catholic Health's mission and evidence of religious activities at Villa Pueblo,

the exemption for the remainder of the property should have been granted.

To the extent that the city relies on *United Presbyterian Ass'n v. Board County Commissioners,* 167 Colo. 485, 448 P.2d 967 (1968), we conclude that that case does not apply here. The association there claimed that the property was exempt from ad valorem taxes because it was owned and used for a charitable purpose under Colorado law. Thus, the court addressed an exemption for a charitable, rather than a religious, organization.

In view of our disposition, we do not address whether the trial court's decision was unconstitutional.

Judgment reversed.

Judge ROY and Judge FURMAN concur.